IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

KATHERINE JEWELL SMITH and
JIMMIE LEWIS SMITH,

     Plaintiffs,

Vs.

METHODIST HOSPITALS OF
MEMPHIS, KEITH G. ANDERSON,
M.D., and THE SUTHERLAND
CLINIC, INC., f/k/a CARDIOLOGY
CONSULTANTS OF MEMPHIS,

     Defendants.

C.A. No. 02A01-9712-CV-00302
Shelby Circuit No. 64779 T.D.

FILED

January 7, 1999

Cecil Crowson, Jr.

Appellate Court Clerk

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE ROBERT L. CHILDERS, JUDGE

David M. Cook, W. Timothy Hayes, Jr.
Karen L. Schlesinger of Memphis
For Defendants-Appellees, Anderson, The Sutherland Clinic, Inc., f/k/a
Cardiology Consultants of Memphis

Gary K. Smith, William D. Domico,
Bryan C. Witt of Memphis
For Defendant-Appellant, Methodist Hosiptals of Memphis

*AFFIRMED*

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

DAVID R. FARMER, JUDGE

HOLLY KIRBY LILLARD, JUDGE

This interlocutory appeal involves an action by a settling tortfeasor for contribution from an alleged joint tortfeasor. Defendant/cross-plaintiff, Methodist Hospital of Memphis (Methodist), appeals from the order of the trial court dismissing its cross-complaint for contribution against defendant/cross-defendant, Keith G. Anderson, M.D.

(Anderson) and the Sutherland Clinic, Inc. (Sutherland).

This case arises out of the alleged injuries suffered by Katherine Smith (Smith) while receiving treatment at Methodist. Smith first met Anderson when he examined her on September 22, 1993, regarding complaints of chest pain. Anderson found blockage of an artery, and recommended that Smith undergo angioplasty. She was subsequently admitted to Methodist on September 28, 1993. The angioplasty was successful, and Smith was transferred to the cardiac recovery area at approximately 5:45 p.m.

That evening Smith apparently complained of severe chest and neck pain and nausea. She alleged in her complaint that when she complained to the nurses on duty they did nothing at first, and then only administered pain medication. Her pain and nausea continued the evening of the September 28, and into the day of September 29, and the nursing staff attempted to alleviate her pain through medication but to no avail.

Smith also alleges that during this time she was hooked up to heart monitoring equipment, and that the nurses on duty failed to examine readouts from the monitor to determine whether Smith's condition was worsening. Smith alleges that during the evening of September 28 and into the day of September 29 the monitor picked up changes that signaled acute damage to the heart muscle.

During the afternoon of September 29, Anderson visited Smith to check her recovery. Finding her in pain, Anderson immediately examined Smith and found that she had suffered a major heart attack. Anderson performed another angioplasty, and Smith was subsequently released on October 5. On the day of her release, Smith suffered a stroke believed to be caused by a clot resulting from the tissue damage from the heart attack on September 28 and 29.

Smith filed suit against Methodist on September 21, 1994 alleging that through its employees Methodist was negligent in its failure to properly monitor, diagnose, treat, recognize, and respond to Smith's medical problems while in the cardiac recovery area on September 28 and 29, 1993. Methodist responded and in an amended answer averred that any injuries suffered by Smith were the result of the medical malpractice of Anderson and his employer Sutherland. Smith amended her complaint to include Anderson and Sutherland as defendants to the action.[1]

On May 9, 1997, Methodist filed another amended answer and added a crossclaim for contribution against Anderson. Then Methodist filed, and the court granted, a motion to mediate the matter, and on May 20, 1997, the parties met to discuss the case. Smith and Methodist eventually agreed to a settlement and release of all claims in exchange for payment by Methodist of $1.7 million.

---

[1]Apparently, Smith reluctantly included Anderson as a defendant and chose not to prosecute her claim against him. In a Motion in Limine filed April 18, 1997, Smith stated that she would not seek to produce expert testimony in her case against Anderson, and he agreed not to seek a directed verdict because of absence of expert proo

After the settlement and Smith's release of all claims, Methodist continued to prosecute its contribution claim against Anderson. On July 18, 1997, Anderson filed a motion to dismiss/for summary judgment claiming that an action for contribution was not viable in this case after *McIntyre v. Ballentine*. The trial court heard arguments on the matter, and by order entered October 3, 1997, granted Anderson's motion to dismiss and Methodist's motion for permission to seek interlocutory appeal. This Court subsequently granted Methodist's T.R.A.P. 9 applica

The issues for review, as stated in Methodist's brief, are:

> 1. Does the case law of this state, when read together with the historical purpose of the contribution remedy and the Legislature's adoption of the Uniform Contribution Among Tortfeasor's Act, demonstrate that contribution not only survived the adoption of comparative fault in Tennessee, but, in many cases is necessary to ensure the fair allocation of fault among all parties?
>
> 2. Did the trial court err in granting Defendant/Cross-Defendants Keith G. Anderson, M.D. and The Sutherland Clinic, Inc., f/k/a Cardiology Consultants of Memphis' Motion to Dismiss the cross-claim for contribution filed against them by Defendant/Cross-Plaintiff Methodist Hospitals of Memphis?

We will consider these issues together.

The transcript of the argument on the motion to dismiss indicates that the trial court considered extrinsic evidence. When considering a motion to dismiss, the trial court retains discretion to consider extrinsic evidence outside the pleadings. *Hixson v. Stickley*, 493 S.W.2d 471, 473 (Tenn. 1973). In the event that the trial court does consider extrinsic evidence, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." Tenn. R. Civ. P. 12.02; *Hixson*, 493 S.W.2d at 473; *Hunt v. Shaw*, 946 S.W.2d 306, 307 (Tenn. App. 1996). Accordingly, we will consider the trial court's order as a ruling on a summary judgment motion.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery

materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Methodist argues that the Legislative adoption of the Uniform Contribution Among Tortfeasor's Act (UCATA) along with the case law of this state support the contention that contribution is still necessary to fairly allocate fault among the parties.

The remedy of contribution was severely limited by the adoption of comparative fault in *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992). The Tennessee Supreme Court discussed the effects of the adoption of the new system on legal principles surrounding tort litigation including contribution.

> [B]ecause a particular defendant will henceforth be liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence, situations where a defendant has paid more than his "share" of a judgment will no longer arise, and therefore the Uniform Contribution Among Tort-feasors Act, T.C.A. Secs. 29-11-101 to 106 (1980), will no longer determine the apportionment of liability between codefendants.

*Id.* at 58.

Subsequent to *McIntyre*, our Supreme Court has considered actions for contribution arising under diverse facts. However, the Supreme Court's latest encounter with the question of contribution arose in *General Electric Co. v. Process Control Co.*, 969 S.W.2d 914 (Tenn. 1998), an opinion released June, 1998, after this case was appealed to this Court.

The case came to the Supreme Court on a certified question of law from the U. S. District Court, Western District of Tennessee where General Electric had filed suit against Process Control for contribution. Process Control filed a motion to dismiss and/or for summary judgment, and the district court requested the Tennessee Supreme Court to address the following certified question of law: "In actions that accrue after the decision in *McIntyre v. Balentine,* under what circumstances is a claim for contribution appropriate under Tennessee law?" *Id.* at

4

915.

The contribution action arose as a result of the following facts as set out in the Court's opinion:

> Douglas Huskey, a Wisconsin resident, was employed by A. O. Smith Corporation ("A. O. Smith") as an electrical engineer. In January of 1994, Huskey was calibrating meters on a switchboard at A. O. Smith's facility in Milan, Tennessee. The switchboard was manufactured by the plaintiff, G. E. An electrical arcing occurred on the switchboard while Huskey was calibrating meters on the switchboard. The electrical arcing caused severe burns and other injuries to Huskey. The defendant, Process Control, allegedly made negligent modificaitons to the switchboard prior to Huskey's accident.
>
> Huskey and his wife filed a products liabilitity claim against G.E. in Wisconsin. Their claims were predicated upon theories of negligence and strict liability. G.E.'s counsel was of the opinion that Process Control would not be subject to personal jurisdiction in the Wisconsin state court action. G.E., therefore, did not attempt to join Process Control as a party. G.E. argued during trial, however, that Process Control made negligent modifications to the switchboard which caused Huskey's injuries.
>
> The case was decided by a jury under Wisconsin law. The jury rejected the strict liability claim but returned a verdict in favor of Huskey on a theory of a nelgigence. Fault was apportioned by the jury as follows: 25 percent to Huskey, 32 percent to G.E. and 43 percent to A. O. Smith. The jury was not asked to assess fault against Process Control. G.E. satisfied the Wisconsin judgment by paying the Huskeys approximately 2.6 million dollars.

*Id.* at 915-16.

In answering the certified question, the Court said:

> *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992), did not "completely abolish the remedy of contribution." *Bervoets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905, 907 (Tenn. 1994). Contribution may still be viable in the following limited circumstances:
>
> > 1. cases in which prior to *McIntyre* the cause of action arose, the suit was filed and the parties had made irrevocable litigation decisions based on pre-*McIntyre* law, see *Owens v. Truckstops of America*, 915 S.W.2d 420 (Tenn. 1996); *Bervoets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905 (Tenn. 1994);
> >
> > 2. cases in which joint and several liability continues to apply under doctrines such as the family purpose doctrine, cases in which tortfeasors act in concert or collectively with one another, cases in which the doctrine of respondeat superior permits vicarious liability due to an agency-type relationship, or in the "appropriate" products liability case, *see Resolution Trust Corp. v. Block*, 924 S.W.2d 354 (Tenn. 1996); *Camper v. Minor*, 915 S.W.2d 437 (Tenn.

1996); ***Owens v. Truckstops of Amer.***, 915 S.W.2d 420 (Tenn. 1996), or

3. in the "appropriate case" in which "fairness demands," *see **Owens***, 915 S.W.2d at 430 (allowing contribution when "fairness demands"); ***Bervoets***, 891 S.W.2d at 907 (recognizing contribution in the "appropriate case").

The third circumstance, however, is not a broad "catch-all" provision that defeats the fundamental concepts of our comparative fault law. The circumstances under which "fairness demands" should be applicable only when failure to allow contribution would impose an injustice.

*Id.* at 916.

In holding that under the particular facts of this case an action for contribution may be viable, the Court said:

We believe that fairness demands an action for contribution based upon the following factors: (1) the Huskeys' claim was litigated pursuant to Wisconsin law; (2) Process Control may have been a tortfeasor contributing to Huskey's injuries but was not subject to personal jurisdiction in the Huskeys' suit; and (3) G.E. was jointly and severally liable under Wisconsin law to the Huskeys for any damages or fault assigned by the jury to other tortfeasors.

*Id.* at 916-17.

Methodist asserts that its suit for contribution should be allowed because it falls under both the second and third circumstances set out in General Electric. After careful examination, we disagree with Methodist's contention for reasons hereinafter set out.

Methodist first argues that this is an appropriate action for contribution because the parties "act[ed] in concert or collectively with one another." Smith sued Anderson for medical malpractice alleging that his standard of care fell below that of the standard of medical care in the community based upon the assertions that he failed to properly use appropriate drugs and medicine, he failed to properly perform the angioplasty, he failed to recognize the seriousness of Smith's condition, he failed to ensure proper monitoring of Smith's condition after the angioplasty, and he failed to promptly and properly treat Smith's condition. Smith sued Methodist for the negligent acts of its nurses

a) failing to use diagnostic tools and information available to determine Mrs. Smith's condition;
b) failing to properly monitor Mrs. Smith's condition;
c) failing to promptly and properly diagnose Mrs. Smith's condition;
d) failing to promptly and properly treat Mrs. Smith's condition;
e) failing to promptly recognize and properly respond to signs and symptoms of Mrs. Smith's condition;
f) failing to promptly and properly document the course of Mrs. Smith's condition and treatment; and
g) failing to promptly and properly communicate and consult with a physician or other qualified health care provider possessing the training, experience and skill necessary to promptly and properly diagnose and treat Mrs. Smith's condition.

If there was negligence on the part of both of these parties, they could be denominated joint tortfeasors because

6

of their alleged joint concurrent negligence. Prior to *McIntyre*, this would render them jointly and severally liable. *McIntyre* specifically noted that at least as to ordinary joint tortfeasors, joint and several liability is no longer viable in Tennessee. *See McIntyre*, 833 S.W.2d at 58. The duties and responsibilities of the nurses on the one hand and the surgeon on the other are distinctly different, and the allegations against them concern separate and unrelated actions. "A person is deemed to act in concert when he acts *with another* to bring about some preconceived result." *Black's Law Dictionary,* 262 (5th ed. 1979)(emphasis added); *see also Vance v. Billingsly*, 487 F. Supp. 439, 442 (E.D. Tenn. 1980). Any doubt as to whether there was a concert of action between the physician and the nurse is dispelled by Methodist's statements in its answer to plaintiff's amended complaint: "[I]f any injuries or damages allegedly suffered by plaintiffs resulted from negligent acts, such were the sole, direct and proximate result of the acts of third parties for whose acts Methodist is not liable under the doctrine of *respondeat superior* or any other theory. Such parties include Dr. Keith G. Anderson and his employer, The Sutherland Clinic, Inc...." Accordingly, Methodist is not entitled to pursue contribution on the grounds that the parties were acting collectively or in concert

Methodist next asserts that in accordance with the principles set out in *General Electric*, the present case presents an "appropriate case" in which fairness demands that contribution be allowed. It bases this argument on the allegations that Smith did not want to include Anderson as a defendant in the original suit, and that Anderson intended to help Smith win a large verdict against Methodist.[2] Methodist alleges that for these reasons it was forced to settle the suit, and should now be allowed to seek contribution from Anderson.

Methodist further argues that a "situation in which a plaintiff and a defendant are working together to attempt to secure an inappropriate allocation of fault, is exactly the sort of situation in which fairness demands that an action for contribution be held appropriate." We disagree. In *General Electric*, the parties had no chance to bring Process Control into the action because of a lack of jurisdiction. Therefore, it was impossible to assess fault using the principles set forth in *McIntyre*. Without allowing a suit for contribution, it would have been impossible for *General Electric* to reduce the damages by assessing fault on the other defendants. However, we do not have a situation that even approximates the situation in *General Electric.* In fact, we have a situation in which the defendants were joined in an action, and one party decided to settle instead of go to trial.

---

[2]Counsel for Anderson apparently sent Methodist's attorneys a letter stating in pertinent part:

> Apparently, the hospital thought we would roll over and contribute to a settlement when you hired an expert in Atlanta to attack Dr. Anderson. Please let me assure you and all involved on behalf of the hospital that we will not contribute one red cent to a settlement and that I will do everything that I possibly can do to insure that a large verdict, including punitive damages, results against Methodist Hospitals as a result of this trial.

A clear explanation of how comparative fault should be used to supersede the remedy of contribution is found in *Owens v. Truckstops of Am.*, 915 S.W.2d 420 (Tenn. 1996). *Owens* examined the earlier opinion of *Bervoets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905 (Tenn. 1994), a case on which Methodist relies to assert that contribution should be allowed in the case at bar. In *Bervoets*, the Tennessee Supreme Court allowed a suit for contribution when a plaintiff injured in an automobile accident sued several defendants. One of the defendants entered into a settlement agreement with the plaintiff which released the claims against all the parties, and subsequently sought contribution from the other tortfeasors.

The *Owens* Court explained this ruling:

> The holding in *Bervoets* was that under comparative fault, Jackson and Adanac, Inc. were not jointly and severally liable to the plaintiff, but, Jackson, who paid the plaintiffs' damages in full, would be allowed, *in that transitional case*, to assert a claim for contribution against Adanac, Inc. so that liability would be assessed, as explained on the petition to rehear, according to "the percentage of fault attributable to each of the defendants."
>
> ***Had the plaintiff's cause of action in Bervoets arisen subsequent to the adoption of comparative fault, Jackson, in an effort to reduce the extent of his liability, would have alleged in his answer that Adanac, Inc. caused or contributed to the damages, and the plaintiff, on pain of recovering less than full damages, would have amended his complaint pursuant to Section 20-1-119 to assert a claim against Adanac, Inc. Thus, the purpose of comparative fault, the assessment of liability in proportion to fault, would have been accomplished without the proceeding to enforce contribution, which was made necessary in Bervoets because the time within which the plaintiff could assert a claim against Adanac, Inc. directly had expired when McIntyre was decided.***

*Id.* at 429 (emphasis added).

Methodist's reliance on the Uniform Contribution Among Tort-feasors Act, T.C.A. § 29-11-101 through § 29-11-106 (1980) is misplaced. The Act applies only to those situations where "two(2) or more persons are jointly or severally liable in tort for the same injury to person or property or for the same wrongful death." T.C.A. § 29-11-102. *McIntyre* ended joint and several liability for the concurrent acts of tortfeasors, and *General Electric* explains those instances where T.C.A. § 29-11-101 et seq. would be applicable. The third circumstance mentioned in *General Electric* for the applicability of contribution, i.e., where fairness demands, is expressed by the Court with the caution that it is not a catch-all provision and is not meant to defeat "the fundamental concepts of our comparative fault law." *General Electric*, 969 S.W.2d at 916. What Methodist seeks in this action would defeat the fundamental concept of

comparative fault, because, the concept envisions allocation of fault in one proceeding, insofar as possible. *See Owens*, 915 S.W.2d 420, 425 (Tenn. 1996). Methodist had every opportunity to take this case to trial, present evidence against its co-defendants Anderson and Sutherland and then have the jury decide percentage of fault and assess damages among the defendants. Methodist chose not to take this course and now must live with the consequences. It matters little that Smith did not wish to prosecute her claim against Anderson because it is basic to our system of justice that in civil actions the plaintiff is in control of her own case and can proceed as she sees fit.

To allow defendants to second-guess a plaintiff's tactics in trying a lawsuit would open a Pandora's Box in every case involving multiple defendants. To follow Methodist's argument to its conclusion would allow a defendant against whom a verdict is rendered to seek contribution on the ground that plaintiff's trial tactics resulted in a verdict in favor of a co-defendant. Such a result would be incongruous.

Fairness does not require that a defendant, in an action that could have been tried on the merits with complete allocation of fault, be allowed to voluntarily obtain a release of a non-settling defendant, and then sue for contribution. To allow such a result flies in the face of the entire principle of comparative fault as pronounced in *McIn*.

The order of the trial court is affirmed. Costs of appeal are assessed to the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**