FILED
07/22/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 7, 2020

## IN RE ESTATE OF PAUL D. FREEMAN, DECEASED

Appeal from the Chancery Court for Sumner County
No. 2010-PR-709      Louis W. Oliver, Chancellor

_____

No. M2018-02131-COA-R3-CV

_____

This appeal arises from an action to remove the decedent's son as the executor of the estate. The action also sought to remove the decedent's son as the nominated trustee of two testamentary trusts; however, the trustee never assumed his duties because neither trust was ever funded. The decedent's wife was the principal beneficiary of the estate and both testamentary trusts. The action was initiated by the conservator for the decedent's wife who alleged, *inter alia*, that the executor/trustee failed to distribute any property or income to the wife and used the assets for his personal benefit. The conservator also alleged that he improperly used the estate's assets to satisfy a bank loan that encumbered real property he jointly owned with the decedent for which he and the decedent were liable. The conservator claimed the bank loan was not a lawful debt of the estate because the bank failed to file a claim against the estate within the time limits set forth in Tenn. Code Ann. § 30-2-307. In response, the executor/trustee contended the action to remove him was barred by the one-year statute of limitations for breach of trust actions. He also contended the debt to the bank was properly paid in accordance with the law of exoneration. After a hearing, the trial court found that the law of exoneration did not apply and held that the estate was not obligated on the debt to the bank because the bank did not timely file a claim against the estate. Additionally, the trial court removed the decedent's son as both the executor and trustee based on his persistent failure to administer the estate and appointed a successor executor and successor trustee. The successor executor filed an inventory and accounting for the estate, and the former executor filed an objection. At the hearing that followed, the former executor submitted into evidence a document entitled "Land Agreement" and claimed that the agreement was enforceable against the estate as a contract to make a will. The trial court determined that the Land Agreement was a contract to make a will, but the claim was time barred. In its final order, the court assessed damages against the former executor and awarded the conservator her attorney's fees. The former executor appealed, arguing that (1) the action was barred by the statute of limitations for breach of trust actions, (2) the Land Agreement was enforceable against the estate, (3) the debt to the bank was properly paid under the law of exoneration, and (4) he was not liable for attorney's fees. We affirm the trial court's decision in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT, and W. NEAL MCBRAYER, JJ., joined.

Charles W. Holt, Jr., Lawrenceburg, Tennessee, for the appellant, Allen Freeman.

Randle S. Davis, Hendersonville, Tennessee, for the appellee, Brenda Kaye Austin, Individually and as Personal Representative for the Estate of Margaret Jean Denning Freeman.

**OPINION**

Paul D. Freeman ("Decedent") died testate on July 6, 2010, survived by his wife, Margaret Freeman ("Mrs. Freeman"), and four children, David Rickman Freeman, Brenda Kaye Austin, Larry Douglas Freeman, and Allen Ray Freeman.

Decedent was a long-standing and successful farmer in Sumner County, Tennessee. For years he, along with his brother, Joe Freeman, and his nephews and sons, conducted farming operations as a partnership. That partnership dissolved in 1999. Thereafter, Decedent, along with his sons, Larry and Allen, continued to farm together as a partnership until January 4, 2002, when they entered into an agreement to dissolve their partnership. The agreement was titled "Land Agreement."

Most of the operative provisions, including transfers of assets and assumption of liabilities, required under the agreement were performed at the time of or shortly after its execution. Other provisions were to take effect following Decedent's death. These provisions contemplated the sale and/or transfer of land to Larry and Allen and the transfer of farm equipment and cattle to Allen following Decedent's death.

In 2005, Decedent and Allen Freeman, who continued to perform some of their respective farming operations together, signed a promissory note and deed of trust with Volunteer State Bank for which they were jointly and severally liable. The real property located on Denning Ford Road, which Decedent and Allen Freeman co-owned, served as collateral to secure the indebtedness. The note and deed of trust were still in effect at the time of Decedent's death.

Decedent and Allen Freeman continued their joint farming operations until Decedent's death. At the time of his death, Decedent possessed a valuable estate, including approximately 500 acres of real property in Sumner County.

Decedent's Last Will and Testament (the "Will"), which was executed on January 5, 2009, named his son, Allen Freeman, the executor of his Will and trustee of two testamentary trusts established for the sole benefit of Mrs. Freeman. One was a Credit Shelter Trust and the other, a Marital Deduction Trust. Mrs. Freeman was the primary beneficiary of both trusts for the remainder of her life. Decedent devised his entire estate to the testamentary trusts, except for his tangible personal property, which he devised directly to Mrs. Freeman in Article Second of the Will.

Decedent died at the age of 85 on July 6, 2010. Allen Freeman filed a petition to probate the estate on July 21, 2010, in Sumner County Chancery Court. On July 27, the court admitted the Will to probate and appointed Allen Freeman as the executor of the estate and trustee of the two trusts. The gross estate was valued at $3,000,000 for Tennessee inheritance tax purposes.

Article Third of the Will explained how the Executor was to fund the Credit Shelter Trust, which was dependent on federal tax elections, and further provided:

(a) My Trustee shall manage, invest and reinvest said sum and shall pay the entire net income therefrom to or for the benefit of my wife, from and after my death and for so long as my wife lives, in quarter-annual or more frequent intervals as determined in the absolute discretion of my Trustee.

Likewise, Article Fourth of the Will allocated Decedent's residuary estate to fund the Marital Deduction Trust and directed as follows:

(a) My Trustee shall pay the entire net income therefrom to my wife, MARGARET FREEMAN, for so long as she lives, in quarter-annual or more frequent intervals as determined in the absolute discretion of my Trustee.

Article Seventh of the Will provided that, upon the death of Mrs. Freeman, the trusts were to be dissolved, and the trustee was to distribute the principal and accumulated income of the trusts to Decedent's children. Under Article Seventh, Allen Freeman was the beneficiary of Decedent's 50% interest in the real property located on Denning Ford Road, which he and Decedent co-owned and which was still encumbered by the note and deed of trust.

In April 2011, Brenda Kaye Austin (hereinafter, "Conservator") was appointed conservator of Mrs. Freeman. On December 11, 2011, Conservator filed a Motion Requesting Inventory and Accounting, alleging, *inter alia*, that Allen Freeman failed to make any distributions of the income from the testamentary trusts to Mrs. Freeman. The hearing on the motion was suspended to allow the parties to attempt to resolve the issues related to the distribution of Decedent's assets without the court's intervention. On July 10,

2012, however, Conservator filed an amended motion on behalf of Mrs. Freeman requesting that the court order Allen Freeman to prepare and file an inventory of Decedent's assets with a full accounting.

In September 2012, the court entered an order requiring Allen Freeman to file a complete and verified inventory of the assets in Decedent's estate as of his death and a complete and verified accounting of the receipts, disbursements, and distributions relating to the administration of the estate. The court also ruled that, in accordance with Article Second of the Will, Mrs. Freeman became the legal owner of all tangible personal property owned by Decedent at the time of his death, which had yet to be distributed to Mrs. Freeman.

Shortly following, Allen Freeman filed an inventory and accounting, and Conservator filed an objection. In December 2012, the court entered an order requiring him to file an amended inventory of all assets and an amended interim detailed accounting. On January 11, 2013, he filed an amended inventory and amended interim accounting.

On September 11, 2015, Conservator filed a Motion to Remove Allen Ray Freeman as Executor/Trustee; for the Appointment of Successor Executor/Trustee; [and] for Updated and Final Accounting and Distribution from the Estate/Trusts to [Mrs. Freeman]. Conservator claimed that Allen Freeman, *inter alia*, used the assets of Decedent's estate and/or testamentary trusts for his personal benefit and farming operations; rented property of the estate and/or testamentary trusts and set rents without approval from the court as to the reasonableness of the rent; used funds from the estate to pay a loan to Volunteer State Bank, which was not a lawful debt of the estate; and caused the estate and/or testamentary trusts to incur and pay unnecessary income taxes. Conservator claimed that Allen Freeman "has yet to distribute a single dollar to Mrs. Freeman" in accordance with the terms of Decedent's Will and testamentary trusts.

Conservator asked, *inter alia*, that (1) Allen Freeman be removed immediately, (2) a successor be appointed, (3) Allen Freeman be ordered to prepare and file with the court a detailed and final accounting for the estate and testamentary trusts, and (4) he be ordered to reimburse the estate and testamentary trusts his personal fees and expenses, all funds paid to or for the benefit of his farming business, all funds used to pay the bank loan, and the income taxes paid by the estate as a result of the improper loan payments.

In his response, Allen Freeman denied Conservator's claims. Specifically, he asserted that, because Decedent was an obligor on the Volunteer State Bank note, the principal was properly paid by Decedent's estate through the law of exoneration. Thereafter, Allen Freeman filed a supplemental response to the motion to remove, contending that Conservator's action was time barred in accordance with Tenn. Code Ann. § 35-15-1005, which provides for a one-year statute of limitations for breach of trust actions.

The court held an evidentiary hearing on December 16, 2015, to address Conservator's allegation that Allen Freeman improperly made payments on the Volunteer State Bank loan and his claim that, as the beneficiary of the encumbered real property, he was entitled to exoneration of the lien. On February 8, 2016, the court entered an order denying the right of exoneration to Allen Freeman, finding as follows:

> The Last Will and Testament of the late Paul D. Freeman did not contain any provision which provides direction and/or instruction concerning the payment of the Decedent's debts.
>
> Volunteer State Bank did not timely file/perfect its creditor's claim against the Estate of Paul D. Freeman and, therefore, the loan in question is not a lawful or just debt of the Estate of Paul D. Freeman.
>
> [Allen Freeman] is a joint owner and the beneficiary of the real property pledged as collateral for the loan from Volunteer State Bank.
>
> [Allen Freeman] fully participated in his individual capacity in the procurement of the loan from Volunteer State Bank and, thereby, has been personally liable as a joint obligor on the entirety of the loan from Volunteer State Bank before and after the death of [Decedent].
>
> The loan owed to Volunteer State Bank is not a lawful/just debt of [Decedent] and [Allen Freeman] is not entitled to the doctrine of exoneration.

The court ordered Allen Freeman to reimburse Decedent's estate any payments made to Volunteer State Bank from Decedent's assets, which the court calculated to be $85,677.63.[1]

The court held a hearing on Conservator's motion to remove Allen Freeman on February 9, 2016, and February 18, 2016, and entered an order on August 31, 2016, removing Allen Freeman and appointing Sumner County attorney, Jacob Mason ("Mr. Mason"), as the successor executor and successor trustee. The court determined:

---

[1] The court found that Decedent's estate made the following payments toward the loan:

(i) 2010 payments of principal & interest in the amounts of $9,350.06 and $1,499.21, respectively; (ii) 2011 payments of principal & interest in the amounts of $19,250.25 and $2,448.29, respectively; (iii) 2012 payments of principal & interest in the amounts of $19,861.28 and $1,837.26, respectively; (iv) 2013 payments of principal & interest in the amounts of $20,773.61 and $924.93 respectively; and (v) 2014 payments of principal & interest in the amounts of $9,541.90 and $190.84, respectively.

20. The Executor Allen R. Freeman should be removed because of his unfitness, unwillingness, or persistent failure of the Executor/Trustee to administer the Estate and Trusts effectively. The Court determines the removal of the Executor and Trustee best serves the interest of the beneficiaries. As stated hereinabove, the Executor:

a.) Failed to properly convey to the beneficiary, surviving spouse the personal property awarded to her under the Decedent's Will;

b.) Utilized the personal property of the Estate for five years for his own personal and business benefit by utilizing the farm equipment solely owned by the Decedent's Estate and farm equipment owned 50% by Decedent's Estate in the Executor's personal farming operation without compensation to the Estate, and without the consent of the beneficiary or the Court.

c.) Expended funds of the Estate in the maintenance of the Executor's farming operation;

d.) Rented residential property of the Estate to relatives without approval of the beneficiaries or the Court of the rental or of the rates;

e.) Did not set up an Estate bank account and co-mingled Estate funds with Executor's personal and business accounts;

f.) Did not discharge his duties as Executor within a reasonable period of time, distribute the Estate in a timely manner, and close the administration as quickly as possible. [Citation omitted].

g.) A conflict of interest exists between the Executor's personal interests and the interests of the Estate and beneficiaries. [Citation omitted].

h.) The Executor and Trustee has shown a pattern of indifference to the interests of some or all of the beneficiaries of the Estate and Trust by not making the proper distributions as ordered by the Will.

The court also found that Allen Freeman failed "to make any payments whatsoever" from either trust to Mrs. Freeman for the five years in which she survived Decedent. The court determined that "the benefits to which the surviving spouse was entitled should be a

part of her Probate Estate once established, and thereby the distribution of the Trust income should be determined."[2]

Mr. Mason filed an updated inventory and accounting of Decedent's estate with the court on January 31, 2017, and Allen Freeman filed an objection. At the hearing held on May 31, 2017, Allen Freeman submitted into evidence the document entitled "Land Agreement," signed by Decedent, Mrs. Freeman, Larry Freeman, and Allen Freeman on January 4, 2002. At the hearing, Allen Freeman argued that the Land Agreement was a contract to make a will, and thus, binding on Decedent's estate. Decedent had not raised the issue of the Land Agreement and its effect on the Will prior to the May 2017 hearing.

The court entered an order on June 29, 2018, determining that the Land Agreement was a contract to make or revoke a will in accordance with Tenn. Code Ann. § 32-3-107 and ruled as follows:

> . . . Allen Freeman, as a signatory thereon, had actual notice of the existence of the Land Agreement prior to the filing of the Petition for Probate on July 21, 2010, and made no effort to present the Land Agreement to the Court until May 31, 2017, after a total of six years and ten months had elapsed since the Petition for Probate was filed. Therefore, the pursuit of enforcement of Land Agreement as a claim against the Estate or as a Will contest is time barred in accordance with *JUNOT vs. The Estate of Gilliam*, 759 SW2d 654 (Sup. Ct. Tenn. October 17, 1988) citing *Rogers v. Russell*, 733 S.W.2d 79 (Tenn. App. 1986).

After calculating the income produced by the estate from the date of Decedent's death to the date of Mrs. Freeman's death, the court entered a final judgment in favor of Decedent's Estate and the Estate of Mrs. Freeman against Allen Freeman in the amount of $321,941.[3] In accordance with Tenn. Code Ann. § 35-15-1004, the court awarded Conservator her attorney's fees for prosecuting the action. The court also awarded Larry Freeman his attorneys' fees, finding that his attorney "performed valuable services for the benefit of the beneficiaries of the Estate and Trusts."

This appeal followed.

## ANALYSIS

---

[2] The court also made a finding that Allen Freeman "funded" the Credit Shelter Trust with $1,000,000 and the Marital Deduction Trust with $115,581, but there is no evidence in the record that supported a finding that either trust was funded. In fact, it is undisputed that neither trust was ever funded.

[3] Mrs. Freeman died on October 21, 2015, and no one has challenged Conservator's authority to pursue these claims on behalf of Mrs. Freeman's estate. Because it has not been raised as an issue, we will not address the matter.

Allen Freeman presents four issues for our review, which we have rephrased as follows:

I.      Was Conservator's motion to remove Allen Freeman barred by the one-year statute of limitations for breach of trust actions pursuant to Tenn. Code Ann. § 35-15-1005(a) and (b)?

II.     Did the trial court err in determining that the Land Agreement was not enforceable against Decedent's estate?

III.    Did the trial court err in determining that the law of exoneration did not apply to the Volunteer State Bank loan and in determining the amount of the payments required to be repaid to the estate by Allen Freeman?

IV.     Did the trial court err in awarding attorney's fees pursuant to Tenn. Code Ann. § 35-15-1004(a)?

## I. STATUTE OF LIMITATIONS

Allen Freeman argues that Conservator's motion to remove him was a breach of trust action, and pursuant to Tenn. Code Ann. § 35-15-1005(a) and (b), a beneficiary must file a breach of trust action within one year of receiving information "that adequately disclosed facts indicating the existence of a potential claim for breach of trust." Thus, he argues that Conservator had one year from January 11, 2013, the date he filed the amended inventory and amended detailed accounting, to file her action. Because Conservator did not file her action until September 11, 2015, Allen Freeman argues that Conservator's claim was time barred.

In response, Conservator contends that her action to remove Allen Freeman was not for breach of trust. Rather, her action was to remove Allen Freeman for "unfitness, unwillingness, or persistent failure" to administer the estate and trusts effectively in accordance with § 35-15-706(b)(3); therefore, the statute of limitations for breach of trust actions did not apply.

The determination of whether a claim is barred by the statute of limitations is a question of law that we review de novo with no presumption of correctness accorded to the trial court's decision. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012).

A breach of trust is defined as a "violation by a trustee of a duty the trustee owes to a beneficiary." Tenn. Code Ann. § 35-15-1001(a). When a court finds that a trustee is liable

for breach of trust, the court may remove the trustee in accordance with Tenn. Code Ann. § 35-15-706, and in addition to removal, may assess damages under § 35-15-1001(b).

Tennessee Code Annotated, section 35-15-706(b) lists four grounds for which the court may remove a trustee, two of which pertain to the facts of this case. The court may remove a trustee if "[t]he trustee has committed a serious breach of trust." Tenn. Code Ann. § 35-15-706(b)(1). The court may also remove a trustee "[b]ecause of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, [and] the court determines that removal of the trustee best serves the interests of the beneficiaries[.]" Tenn. Code Ann. § 35-15-706(b)(3). In addition to authorizing the removal of a trustee, § 30-1-151 provides that an executor may also "be removed in accordance with the procedures in § 35-15-706."

To determine whether the statute of limitations for a breach of trust action pursuant to Tenn. Code Ann. § 35-15-1005(a) and (b) applies, we must first determine the gravamen of Conservator's motion to remove Allen Freeman as executor and trustee. *See Redwing*, 363 S.W.3d at 457. "In common parlance, this rather elliptical phrase refers to the 'substantial point,' the 'real purpose,' or the 'object' of the [motion]." *Id*. (citations omitted).

Conservator alleged, in pertinent part, that Allen Freeman acted as follows:

(a) Utilized the assets of the Estate, the Credit Shelter Trust and/or the Marital Deduction Trust either for his personal benefit and/or in furtherance of his personal business operations **without having obtained any approval from the Court for any such action on his part either as Executor for the Estate and/or as Trustee for the two testamentary Trusts**.

(b) In consideration of his personal use of the assets of the Estate, the Credit Shelter Trust and/or the Marital Deduction Trust, [Allen Freeman] has set and paid fees and/or rents to the Estate, the Credit Shelter Trust and/or the Marital Deduction Trusts the amounts of which were set solely by [Allen Freeman] **without having obtained approval from this Court as to the appropriateness and reasonableness of said fees and/or rents.**

(c) Sold assets of the Estate, the Credit Shelter Trust and/or the Marital Deduction Trust **without having obtained approval from this Court as to the appropriateness and reasonableness of any such sales.**

(d) Paid fees to himself as Executor for the Estate **without having obtained approval for such fees from the Court.**

(e) Paid fees & expenses to his legal counsel **without said fees & expenses having been submitted to and approved by the Court.**

(f) Either allowed a relative of his to make use of assets of the Estate and/or either of the two testamentary Trusts or paid funds to a relative of his from the Estate and/or either of the two testamentary Trusts **without having obtained approval for such actions from this Court.**

(g) Paid hundreds of thousands of dollars from the Estate and/or the two testamentary Trusts to Volunteer State Bank on a loan **which is not a lawful debt of the Estate and/or Trusts**, and for which [Allen Freeman] is personally obligated, **without having obtained approval for such actions from this Court.**

(h) Caused the Estate and/or the two testamentary Trusts to incur and pay tens of thousands of dollars in unnecessary income taxes due to his use as Executor or Trustee of income of the Estate and/or the two testamentary Trusts to make large, nondeductible and improper principal payments on his above referenced personal loan with Volunteer State Bank.

(Emphasis in original).

Allen Freeman contends that Conservator chose to proceed on a theory of breach of trust and therefore the statute of limitations for such an action applies. As this court has previously acknowledged, "in civil actions the plaintiff is in control of her own case and can proceed as she sees fit," *Smith v. Methodist Hosps. of Memphis*, 995 S.W.2d 584, 591 (Tenn. Ct. App. 1999); however, this does not prevent the court from determining the true nature of the claims alleged. In determining the applicable statute of limitations to an action, a plaintiff's characterization of the claims in a complaint are not dispositive; rather, the court must ascertain the gravamen of the complaint. *Redwing*, 363 S.W.3d at 457. A focus on the gravamen of a complaint aligns with the general policy not to elevate form over substance. *Id*.; *see Boelter v. Reagan*, No. M2010-01354-COA-R3-CV, 2011 WL 1886573, at *3 (Tenn. Ct. App. May 18, 2011) (reviewing the essence of the trial court's order because "we refuse to elevate form over substance"); *see also Estate of Doyle v. Hunt*, 60 S.W.3d 838, 842 (Tenn. Ct. App. 2001) ("A . . . court is not bound by the title of a pleading, but rather the court is to give effect to the pleading's substance and treat it according to the relief sought therein.").

In *Burks v. Boles*, 934 S.W.2d 653, 654 (Tenn. Ct. App. 1996), the defendants argued that the plaintiff's claim to resolve a boundary dispute was really an ejectment action, which required additional proof; however, this court did not merely follow the plaintiff's characterization of the claims. Instead, we made our own independent

determination as to the gravamen of the complaint. *Id*. In another case, we rejected the plaintiff's contention that he raised premises liability claims that had not been properly disposed of by the trial court. *Smith v. Benihana Nat'l Corp.*, 592 S.W.3d 864, 872 (Tenn. Ct. App. 2019). In making this determination, we again considered the gravamen of the complaint, including the fact that the plaintiff's complaint did not allege that he was injured by a dangerous or defective condition on the premises. *Id.*

Conservator's motion to remove Allen Freeman claims that he, in his role as executor of the estate, failed to properly administer the estate by, *inter alia*, using estate assets for his personal benefit and farming operations, selling the estate's assets and paying himself executor's fees without the court's approval, and paying a debt that was not a lawful debt of the estate. We find it significant that the trial court removed Allen Freeman as the executor of Decedent's estate, as well as the nominated trustee of the two testamentary trusts, based on grounds that almost exclusively pertained to his role as executor of Decedent's estate, not as a trustee.

In the August 2016 order, the court identified specific reasons for removing Allen Freeman. Those reasons include the court's finding that he, in his capacity as the executor of the estate, failed to properly convey to the surviving spouse the personal property awarded to her under the Will, utilized the personal property of the estate for his own personal and business benefit, expended estate funds to maintain Allen Freeman's farming operation, failed to set up an estate bank account, co-mingled estate funds with his personal accounts, and failed to discharge his duties as the executor within a reasonable period of time.

Also significant is the fact that the trial court did not find that Allen Freeman used or misused any trust assets for his personal benefit or otherwise improperly expended any trust assets. As for his failures as a trustee, the court found that Allen Freeman failed "to make any payments whatsoever" from either trust to Mrs. Freeman. Essentially, the court found that Allen Freeman did absolutely nothing as the trustee of either trust; instead, his failures and the reasons for his removal as a fiduciary pertained to his role as the executor of the estate.

As Allen Freeman correctly notes in his brief, although Conservator's motion for removal asserts a claim for breach of trust by citing Tenn. Code Ann. § 35-15-802, regarding the duty of loyalty of the trustee, and § 35-15-804, regarding prudent administration by the trustee, the trial court did not rule on the applicability of Tenn. Code Ann. § 35-15-1005 to the facts of this case. We, however, find the omission to be of no consequence. This is because Allen Freeman was not removed for breach of duty as a trustee; to the contrary, he was removed based on numerous breaches of duty as the executor of the estate. Thus, he was not removed for a "violation by a trustee of a duty the trustee owes to a beneficiary." Tenn. Code Ann. § 35-15-1001(a).

Tennessee Code Annotated section 35-15-1005 pertains to "a proceeding against a trustee for breach of trust." Because the grounds for which the court removed Allen Freeman as a fiduciary were almost entirely based on his acts and omissions as the executor of the estate, § 35-15-1005 was not relevant. Tennessee Code Annotated, section 35-15-1005 may have been relevant had Allen Freeman assumed his duties as a trustee, but he did not because he, as the executor, failed to fund either trust. That said, the statute of limitations found in Tenn. Code Ann. § 35-15-1005, which applies exclusively to breach of trust actions, does not apply to actions to remove an executor under § 35-15-706(b)(3).

Therefore, we affirm the trial court's determination that the action to remove as well as the monetary claims against Allen Freeman[4] are not barred by the one-year statute of limitations for breach of trust actions.

## II. LAND AGREEMENT

Allen Freeman argues that the Land Agreement was binding on Decedent's estate as a contract to make a will. Therefore, all of the assets that Decedent granted to Allen Freeman under the Land Agreement passed to him and not to the testamentary trusts created by Decedent for the benefit of Mrs. Freeman. In response, Conservator contends that Allen Freeman's claim was time barred.

As previously stated, whether the statute of limitations applies to bar a claim is a question of law that we review de novo with no presumption of correctness accorded to the trial court's decision. *Redwing*, 363 S.W.3d at 456.

The Tennessee Supreme Court recognizes three procedural vehicles for challenging the validity of a will based on the allegation that its execution violated a contract to make a will—"(1) a claim against the estate, (2) a will contest, and (3) an action for specific performance of the contract." *Estate of Brown*, 402 S.W.3d 193, 200 (Tenn. 2013). Allen Freeman did not file any of the foregoing actions in the trial court. Instead, he attempted to assert a claim, for the first time, by entering the Land Agreement into evidence at a hearing on May 31, 2017. Because issues are properly raised in the trial court through the parties' pleadings, this claim was not properly before the trial court. *Webb v. Nashville Area Habitat for Humanity, Inc.* 346 S.W.3d 422, 426 (Tenn. 2011); *see Clark v. Sputniks, LLC*, 368 S.W.3d 431, 440 (Tenn. 2012).

The foregoing notwithstanding, Allen Freeman's claim was barred by all applicable statutes of limitations, whether he had chosen to file a claim against the estate, a will

---

[4] Pursuant to § 706(c), the remedies that are available for breach of trust, as listed in § 35-15-1001(b), are also available when an executor or trustee has been removed for other reasons in accordance with § 706(b). Thus, in addition to the removal of an executor or trustee, the court may also compel the trustee or executor to pay money or restore property. Tenn. Code Ann. § 35-15-1001(b)(3).

- 12 -

contest, or an action for specific performance. *Estate of Brown*, 402 S.W.3d at 200. A claim against Decedent's estate should have been filed within 12 months from the date of Decedent's death, which was July 10, 2010. Tenn. Code Ann. § 30-2-310(a). Consequently, any such claim was time barred as of July 10, 2011. As for a will contest, it must be filed "within two years after the entry of the order admitting the challenged will to probate." *Brown*, 402 S.W.3d at 200 (citing Tenn. Code Ann. § 32-4-108). Here, Decedent's Will was admitted to probate on July 27, 2010, which means the action was time barred as of July 27, 2012. And finally, an action for specific performance upon a testator's breach of contract must be commenced within six years after the cause of action accrued. Tenn. Code Ann. § 28-3-109(a)(3). The cause of action accrued at "the death of the promisor without compliance with the agreement." *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991) (citing C.J.S. *Wills,* § 125 (1956)). Therefore, any action for specific performance upon Decedent's breach of contract was barred as of July 10, 2016.

Accordingly, we affirm the trial court's determination that the Land Agreement was not enforceable against Decedent's estate.

### III. VOLUNTEER STATE BANK LOAN

Allen Freeman argues that he is entitled to have half of the mortgage discharged by the personal property of Decedent's estate under the law of exoneration because Decedent is equally responsible for the debt to Volunteer State Bank. In response, Conservator argues that the law of exoneration did not apply, and the debt was not a lawful debt of the estate because it was time barred under Tenn. Code Ann. § 30-2-307.

Because all of the facts relevant to this issue are undisputed, this is a question of law that we review de novo with no presumption of correctness accorded to the trial court's decision. *In re Estate of Vincent*, 98 S.W.3d 146, 148 (Tenn. 2003).

"Under the common law doctrine of exoneration, an heir or devisee [of encumbered real property] is generally entitled to have encumbrances upon real estate paid by the estate's personalty unless, in the devisee's case, the will directs otherwise." *Id*. This is because "the debt charged upon the realty by the mortgage is the debt of the testator, not that of the devisee, and is primarily payable out of the personal assets" of the testator. *Wilson v. Smith*, 360 S.W.2d 78, 85 (Tenn. Ct. App. 1962) (citing Phillips Pritchard on Wills, Vol. 1 Sec. 306, pp. 296, 297).

That said, Allen Freeman was not the devisee of Decedent's 50% interest in the real property encumbered by the Volunteer State Bank loan. Rather, Decedent devised all of his interest in real property to the testamentary trusts established for Mrs. Freeman. Allen Freeman was merely an expectant beneficiary of the encumbered property upon the dissolution of the trusts following the death of Mrs. Freeman. Accordingly, he was not entitled to exoneration.

Allen Freeman does not dispute the trial court's finding that when Decedent's debt to Volunteer State Bank was paid, it was time barred in accordance with Tenn. Code Ann. § 30-2-307. Therefore, we affirm the trial court's determination that the law of exoneration did not apply, and the debt to Volunteer State Bank was not a lawful debt of Decedent's estate.

Additionally, Allen Freeman contends the trial court erred in determining the amount of the payments required to be repaid to the estate by Allen Freeman. Following an evidentiary hearing on December 16, 2015, the trial court found that Allen Freeman owed the estate more than $85,000 for payments made on the Volunteer State Bank loan.

Allen Freeman contends that the payments made on the loan did not come from the estate but from his own pocket; therefore, he should not be obligated to reimburse the estate for the more than $85,000 expended to satisfy the loan. However, we cannot determine if the trial court erred by finding that Decedent's estate, and not Allen Freeman, made payments on the loan because Allen Freeman did not submit a transcript of the December 2015 hearing or a statement of the evidence. Allen Freeman is the appellant, and the burden is on the appellant to provide us with a transcript of the evidence or a statement of the evidence. Tenn. R. App. P. 24(b) & (c); *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, . . . an appellate court is precluded from considering the issue." *State v. Ballard*, 855 S.W.2d 557, 560–61 (Tenn. 1993). Because the issue has been waived, we affirm the trial court's decision on this issue.

## IV. ATTORNEY'S FEES

Allen Freeman argues that attorney's fees "would have never been incurred had the trial court ruled early on . . . that the motion to remove Allen Freeman as executor . . . should never have gone forward." It is for this reason, alone, he asserts that the trial court erred in awarding attorney's fees. Thus, having determined that the motion to remove Allen Freeman was not time barred and having affirmed his removal, we affirm the trial court's decision to award attorney's fees in accordance with Tenn. Code Ann. § 35-15-1004.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Allen Ray Freeman.

_____
FRANK G. CLEMENT JR., P.J., M.S.