# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 5, 2004 Session

## JASMINE A. ALI v. ERIC N. FISHER, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Sullivan County**
**No. C33888(M)     John S. McLellan, III, Judge**

---

**No. E2003-00255-SC-R11-CV - Filed August 25, 2004**

---

We granted this appeal to determine whether an owner who negligently entrusted his car to another may be held vicariously liable for the driver's negligence in the operation of the car. The trial court submitted the case to the jury for allocation of fault on comparative fault principles, and the jury found the owner twenty percent (20%) at fault and the driver eighty percent (80%) at fault. The trial court later amended the judgment by holding that the owner-entrustor was vicariously liable for the negligence of the driver-entrustee and thus liable for all of the compensatory and punitive damages. The Court of Appeals held that the trial court erred in concluding that the owner-entrustor was vicariously liable for the driver-entrustee's actions and reinstated the initial judgment. After reviewing the record and applicable authority, we conclude that an owner-entrustor's liability for negligent entrustment does not result in vicarious liability for the negligence of the driver-entrustee and that the trial court erred in holding the owner-entrustor liable for all the damages. We therefore affirm the Court of Appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed; Case Remanded to the Circuit Court

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLOPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Jack M. Vaughn and Daniel D. Coughlin, Kingsport, Tennessee, for the Appellant, Jasmine A. Ali.

Charles T. Herndon, IV, and Bradley E. Griffith, Johnson City, Tennessee, for the Appellee, Thomas Scheve.

**OPINION**

**Background**

On November 25, 2000, at about 11:00 p.m., the plaintiff, Jasmine Ali ("Ali"), suffered serious injuries when her car was struck by a car driven by defendant Eric N. Fisher ("Fisher") and owned by defendant Thomas Scheve ("Scheve"). The accident occurred at the intersection of Lynn Garden Drive and Center Street in Kingsport, Tennessee.

Kingsport Police Officer Burke Murray testified that on the night of November 25, 2000, he saw a car on I-181 that had been reported to the police dispatcher as being driven erratically by a possibly intoxicated driver. When officers turned on their blue lights, the car exited the interstate and turned right on Lynn Garden Drive. The car accelerated to a speed in excess of 100 miles per hour, ran a red light at the intersection of Lynn Garden Drive and Center Street, struck Ali's car, became airborne, struck a traffic light pole, and landed on top of her car. Ali suffered severe injuries to her collar bone and right ankle.

Fisher had a blood-alcohol content of 0.21% - more than double the legal limit. Fisher testified that he had become intoxicated from drinking at least eight bottles of six-percent-alcohol beer, smoking marijuana, and taking four Benadryl pills. He said that on the night of the accident, he suffered a "black out" while playing an internet video game. Fisher testified: "the last thing I honestly remember is a – it's like a mix between seeing the – the beer and the visuals on the video game, the smoke from the missiles [part of the video game graphics], and the next thing I knew, I was looking at my mom in the hospital." In addition, Fisher testified that it was his "choice to do the drugs and the alcohol that led to the accident" and that he "took responsibility for it [in] criminal court."[1]

Fisher testified that he had been driving a car owned by Scheve, who was a co-worker at a restaurant called the Minglewood Mountain Bistro ("Minglewood") in downtown Johnson City, Tennessee. Fisher testified that in the two months that he worked with Scheve, the two became close friends. They "partied" a lot together, drank at work and off work, and smoked marijuana. Fisher, who lived in a cabin several miles from Minglewood, stated that he frequently rode to and from work with Scheve. At the time of the accident, Scheve had gone out of town for the Thanksgiving holiday and had loaned his car and his apartment to Fisher.

Fisher asserted that his alcohol and drug abuse was well known among his acquaintances and stated that "everyone knew that [I was] unstable and likely to commit jackassery" after drinking and taking drugs. Fisher testified that the fact that his driver's license had been suspended was also

---

[1] As a result of the accident, in Sullivan County Criminal Court, Fisher pleaded guilty to aggravated assault, reckless aggravated assault, driving under the influence of intoxicants ("DUI") (second offense), driving on a revoked license ("DORL") (third offense), reckless endangerment, and felony evading arrest.

common knowledge among his friends and co-workers and evident by the fact that he rarely drove. Fisher stated his opinion that Scheve knew of the suspended license prior to the accident.

Scheve testified, however, that he and Fisher were only casual acquaintances who worked together and had occasion to "hang around" with some of the same people. Scheve stated that he occasionally drove Fisher home from work because Fisher had no other transportation. After the accident, Scheve admitted that he had loaned his car to Fisher and that he had signed the following statement that had been prepared by Officer Murray:

> On 11-21-00 I was leaving to go out of town for the holidays. I was at my place of employment, at Minglewood Mtn Bistro, in Johnson City, Tenn. I was talking to my friend/coworker Eric Fisher. I don't recall if I offered to let Eric use the car or if he asked to do so. I remember telling him if he didn't have any other way to work or was in a bind, he could use it. I also told him he could use my apartment since its (sic) close to my work. He told me that he would be careful and wouldn't drive it if he was "messed up." After that I left for the airport.

Scheve testified that he had offered to allow Fisher to stay in his apartment, which was one block from work, so that Fisher would not need to use his car to get to work. Scheve testified that he did not know of Fisher's alcohol and drug problems and that he had never seen Fisher inebriated or using any illegal drugs. He testified that he did not know that Fisher's driver's license was suspended and that he would not have allowed Fisher to use his car had he known of Fisher's substance abuse and legal problems. Officer Murray, however, testified that when he asked Scheve what he meant by "messed up," Scheve responded that Fisher had been known to drink and drive, and that Scheve did not want Fisher to drive his car while drinking.

The case was submitted to the jury by the trial judge for allocation of fault on comparative fault principles. The jury returned a verdict finding that Fisher, the driver, was eighty percent (80%) at fault and Scheve, the owner, was twenty percent (20%) at fault in causing the accident. The jury awarded Ali $500,000 in compensatory damages, which the trial court apportioned as $400,000 against Fisher and $100,000 against Scheve.[2] In addition, the jury awarded $25,000 in punitive damages, which the trial court apportioned as $20,000 against Fisher and $5,000 against Scheve. After the entry of the judgment, however, the trial court granted Ali's motion to alter or amend and entered an amended judgment ordering that

> Defendant Scheve is vicariously liable for the fault of Defendant Fisher and all the damages awarded to Plaintiff by the jury. Thus, Plaintiff Jasmine A. Ali shall have and recover the amount of

---

[2] The trial court had ruled prior to trial that it would apportion the damages in relation to the percentage of fault assigned by the jury.

> $500,000.00 in compensatory damages and $25,000.00 in punitive damages from Defendant Scheve, Defendant Fisher, or both.

The Court of Appeals reversed the amended judgment after concluding that Scheve's negligent entrustment did not result in vicarious liability for the conduct of Fisher. The court reinstated the trial court's initial judgment.

We granted review.

## **Analysis**

### Negligent Entrustment and Vicarious Liability

The principal issue in this appeal and a question of first impression for this Court is whether the Court of Appeals erred in concluding that the owner-entrustor could not be held vicariously liable for the actions of the driver-entrustee and, accordingly, reinstating the trial court's initial judgment. This issue presents a question of law, which we review de novo without a presumption of correctness to the conclusions reached below. Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993).

Plaintiff Ali argues that one who negligently entrusts a chattel to another is vicariously liable "for the consequences of any foreseeable tortious acts" that the entrustee commits. She reasons that vicarious liability for negligent entrustment is derivative of the entrustee's negligence because there is no cause of action for negligent entrustment unless there is negligence by the entrustee.

On the other hand, defendant Scheve contends that the Court of Appeals correctly held that he was not vicariously liable for Fisher's conduct because negligent entrustment is an independent tort based upon the negligence of the entrustor rather than the entrustee. Scheve also argues that there was no relationship between him and Fisher upon which vicarious liability could otherwise be imposed and that the trial court's amended judgment violated the principles of Tennessee's comparative fault-based tort system. Finally, Scheve argues that the trial court's decision to impose vicarious liability was prejudicial because he had prepared for trial in reliance on the trial court's pre-trial ruling that damages would be apportioned based upon the jury's allocation of fault under comparative fault principles.

We begin our analysis by reviewing the familiar principles of comparative fault established in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992). In McIntyre, we adopted a system of modified comparative fault by which a plaintiff who is less than fifty percent (50%) at fault may recover damages in an amount reduced by the percentage of fault assigned to the plaintiff. Id. at 57. At the same time, we abandoned the concept of joint and several liability of tortfeasors and replaced it with a fault-based system of liability whereby a tortfeasor would be liable only to the extent of the percentage of fault assigned by the jury. Id. at 58.

Despite these settled principles requiring the allocation of fault among the parties, Ali contends that Scheve was vicariously liable for Fisher's negligence based on his negligent entrustment. Although negligent entrustment "requires proof that a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another," see Restatement (Second) of Torts § 390 (1964), this Court has never specifically addressed the issue of whether a claim of negligent entrustment results in the entrustor's vicarious liability for the negligent acts of the entrustee. See Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 907 (Tenn. 1996).[3]

The Court of Appeals has, however, addressed related issues in its negligent entrustment cases. In Mathis v. Stacy, 606 S.W.2d 290 (Tenn. Ct. App. 1980), for example, the Court of Appeals stated that an automobile owner's liability "does not rest on imputed negligence but is based on his own negligence in entrusting his automobile to an incompetent driver." Id. at 292. The intermediate court clarified that "[t]he issue of the owner's negligence is . . . independent from the issue of the driver's negligence." Id. (citations omitted).

Similarly, in Harper v. Churn, 83 S.W.3d 142 (Tenn. Ct. App. 2001), the Court of Appeals observed that a claim of negligent entrustment requires (1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another. Id. at 146. After concluding that the evidence was insufficient to impose liability for negligent entrustment, the court separately addressed the issue of whether the defendant was liable based on vicarious liability. Id. at 146-48. In other words, the court did not treat negligent entrustment as a theory of vicarious liability. Id.

Because Tennessee courts have not addressed the specific issue presented in this case, we examine decisions in other jurisdictions. For example, the Kansas Supreme Court has addressed this precise issue and has held that fault in a negligent entrustment case must be apportioned between the entrustor and an entrustee. In McCart v. Muir, 641 P.2d 384 (Kan. 1982), the jury found that the father of the negligent driver was liable to the plaintiffs for negligently entrusting his son with the car used in the accident.[4] Id. at 387. In concluding that the trial court erred in failing to instruct the jury on comparative fault, the Kansas Supreme Court said:

> [L]iability in a negligent entrustment case is not founded upon the negligence of the driver of the automobile but upon the primary negligence of the entruster in supplying the chattel, an automobile, to an incompetent and reckless driver. The nature and extent of

---

[3] Although the Woodson court also stated that "one who entrusts another with an automobile knowing of the other's incompetence may be held liable for injuries proximately caused by the negligent use of the automobile," Woodson did not address the issue before us today. 916 S.W.2d at 907. The phrase "may be liable" is permissive and does not mandate that the amount for which a negligent entrustor "may be liable" is the full amount of damages.

[4] Although there was a family relationship between the entrustor and entrustee, the distinction is not material as Kansas rejects the family purpose doctrine. See, e.g., Priestly v. Skourup, 45 P.2d 852, 853 (Kan. 1935).

> negligence of the entruster and of the entrustee are separate and distinct. The percentages of fault may be different in amount and should be determined separately.

Id. at 389. The Kansas Supreme Court therefore held that the liability of a negligent entrustor should be determined according to the principles of comparative fault and that the negligent entrustor's fault must be compared to the entrustee's level of fault. Id.

The Kansas Supreme Court's conclusion is consistent with numerous later decisions holding that negligent entrustment does not necessarily create vicarious liability. For example, the Court of Appeals of Maryland has concluded that a "cause of action for negligent entrustment does not rest on a theory of vicarious liability; it may be maintained against a person who, because he or she entrusts personal property to a known 'reckless' individual, is directly negligent." Neale v. Wright, 585 A.2d 196, 199 (Md. 1991). Similarly, in Broadwater v. Dorsey, the Maryland Court of Special Appeals observed that "[negligent entrustment] does not rest on any vicarious liability – on imputing to the supplier the negligence of the entrustee – but rather on the direct negligence of the supplier in supplying the chattel in the first place." 666 A.2d 1282, 1287 (Md. Ct. Spec. App. 1995), rev'd on other grounds, 688 A.2d 436 (Md. 1997). Likewise, in Dubus v. McArthur, the Florida Court of Appeals held that a complaint cannot state a cause of action for negligent entrustment and vicarious liability because the elements require a showing of different facts that must be separately pleaded. 682 So. 2d 1246, 1247 (Fla. Dist. Ct. App. 1996).[5]

In contrast, the plaintiff relies on Loom Craft Carpet Mills, Inc. v. Gorrell, 823 S.W.2d 431 (Tex. App. 1992), in which the Court of Appeals of Texas concluded that negligent entrustment liability is derivative in nature and that the entrustor may be held liable for the entrustee's negligence. The court reasoned:

> If the owner is negligent, his liability for the acts of the driver is established, and the degree of negligence of the owner would be of no consequence. When the driver's wrong is established, then by negligent entrustment, liability for such wrong is passed on to the owner. . . . We believe the better rule is to apportion fault only among those directly involved in the accident, and to hold the entrustor liable for the percentage of fault apportioned to the driver.

Id. at 432 (citation omitted).

---

[5] See also Gabaldon v. Erisa Mortgage Co., 949 P.2d 1193, 1203 (N.M. Ct. App. 1997), rev'd on other grounds, 990 P.2d 197 (N.M. 1999) (recognizing that "[n]egligent entrustment is not a theory of vicarious liability"); Todd v. Dow, 23 Cal. Rptr. 2d 490 (Cal. Ct. App. 1993) (stating that "liability for negligent entrustment arises from the act of entrustment, not the relationship of the parties").

In our view, the plaintiff's arguments, and the analysis in Gorrell, are not persuasive and are at odds with the numerous authorities recognizing that the tort of negligent entrustment does not create vicarious liability.[6] In addition, we believe the Kansas Supreme Court's application of comparative fault principles as illustrated in McCart reflects the better-reasoned approach for several reasons.

First, the allocation of fault by the jury between the entrustor and the entrustee is entirely consistent with the principal goal of comparative fault under McIntyre, i.e., to link one's liability to one's degree of fault in causing harm. McIntyre, 833 S.W.2d at 58. Moreover, the allocation of fault among the parties promotes the fairness that underlies the system of comparative fault. Id.

Second, the analysis in McCart is consistent with decisions that have explicitly or implicitly recognized that negligent entrustment does not necessarily create vicarious liability. The act of negligent entrustment and the act of negligent operation of a vehicle are separate and distinct. The tort of negligent entrustment is committed when control of the entrusted chattel is relinquished by the entrustor to a person the entrustor knows to be incompetent to use it. Harper, 83 S.W.3d at 146; see also Broadwater, 666 A.2d at 1287 (entrustor's conduct must "be viewed as of the time of the entrustment, not as of the time the entrustee improperly uses the entrusted chattel"). Accordingly, the argument that a negligent entrustment claim does not arise until the entrustee's negligence causes harm does not alone make negligent entrustment derivative of the entrustee's negligence.[7]

Third, the McCart analysis is consistent with the fact that we have only rarely departed from the allocation of fault required under the system of comparative fault we adopted in McIntyre. One exception is that negligent tortfeasors cannot seek to have their fault compared to that of intentional tortfeasors "where the intentional conduct is the foreseeable risk created by the negligent tortfeasor." Turner v. Jordan, 957 S.W.2d 815, 823 (Tenn. 1997). A second exception is where vicarious liability is based on an agency relationship between a principal and the principal's negligent agent, such as the family purpose doctrine or respondeat superior. Browder v. Morris, 975 S.W.2d 308, 311-12 (Tenn. 1998). These exceptions are clearly not applicable to the circumstances of the present case.

---

[6] Although the plaintiff has also cited United Fire & Cas. Co. v. Day, 657 P.2d 981, 982 n.1 (Colo. Ct. App. 1982), for the holding that "'negligent entrustment' . . . is used by courts and commentators to describe a theory of vicarious liability[,]" we have found no convincing authority for that conclusion. Similarly, the Supreme Court of Missouri's observation that "[v]icarious liability . . . has been recognized under varying theories, including . . . negligent entrustment of a chattel to an incompetent," is not supported by authority and is dicta in that case. McHaffie v. Bunch, 891 S.W.2d 822, 826 (Mo. 1995) (en banc).

[7] We disagree with the plaintiff's reliance on the trial court's view that vicarious liability was required under Tennessee Pattern Jury Instruction ("TPI") (Civil) 12.50, which states that "[a]n owner of a motor vehicle is legally responsible for the fault of another if" the three listed elements are present. This pattern instruction does not expressly create vicarious liability or replace the extensive instructions on comparative fault; moreover, although the TPI serve as guides for instructing the jury, they do not have the force of law. See State v. Saylor, 117 S.W.3d 239, 249 n.8 (Tenn. 2003).

Accordingly, we hold that negligent entrustment does not create vicarious liability and that the jury must allocate the fault between the defendants as provided in McIntyre. In this case, the jury correctly allocated fault between Scheve and Fisher, and the Court of Appeals correctly reinstated the trial court's original judgment that apportioned liability for damages based on the jury's findings.

### Defendant Scheve's Motion for a New Trial

We next review Scheve's argument that the trial court erred in denying his motion for a new trial after amending the judgment. Scheve argues that he was prejudiced in preparing for trial because the trial court had ruled prior to trial that the jury would be required to allocate fault between Scheve and Fisher and because the trial court erred in allowing the jury to consider punitive damages.

A trial court's decision regarding whether to grant or deny a motion for a new trial is discretionary in nature, and we accord such rulings great deference. We will only disturb such a decision if it amounts to an abuse of discretion. See Henry v. Goins, 104 S.W.3d 475, 479 (Tenn. 2003).

With regard to Scheve's argument that he was prejudiced by the trial court's pre-trial ruling as to the allocation of fault, our decision in this case renders this issue moot.

With respect to Scheve's argument that the trial court erred in allowing the jury to award punitive damages, we note that the trial court instructed the jury that "[p]unitive damages may be considered if, and only if, the Plaintiff has shown, by clear and convincing evidence, that the Defendant has acted recklessly." See Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). In light of Fisher's testimony, his prior criminal record, and his history of substance abuse, we conclude that the trial court did not err by instructing the jury on punitive damages. Accordingly, the trial court did not err in denying Scheve's motion for a new trial.

### Plaintiff's Request for Post-Judgment Interest

Ali has requested that this Court order post-judgment interest against Scheve for all awards ordered by this court. In his brief, Scheve asserts that "$100,000 (20% of the $500,000 judgment) was deposited with the Sullivan County Law Court Clerk's Office soon after trial. Thus . . . there would be no recoverable interest for the judgment of $100,000."

Tennessee Code Annotated section 47-14-122 (2001) provides, in pertinent part, that "[i]nterest shall be computed on every judgment from the day on which the jury . . . returned the verdict without regard to a motion for a new trial." This language is mandatory. Vooys v. Turner, 49 S.W.3d 318, 322 (Tenn. Ct. App. 2001). We have stated that if money is deposited with the court clerk accompanied by an explicit designation that such money is to be paid in satisfaction of a judgment, interest would no longer accrue on that amount. Underwood v. Liberty Mut. Ins. Co., 782 S.W.2d 175, 176-77 (Tenn. 1989).

Ali does not dispute that $100,000 was paid to the appropriate court clerk. However, we cannot discern from the record when the money was paid or whether the defendant explicitly designated this sum as payable to the plaintiff in satisfaction of the judgment, rather than for safe-keeping pending appeal.[8] In addition, a plaintiff is not required to move for an award of post-judgment interest in the trial court as the issue does not become ripe until the conclusion of the appellate process. See Tenn. R. App. P. 41.

Accordingly, after reviewing the record and applicable law, we conclude that the record is insufficient for us to address this factual issue. We remand this issue to the trial court for a factual finding and a determination of whether the plaintiff is entitled to post-judgment interest and if so, in what amount.

## **Conclusion**

After reviewing the record and applicable authority, we conclude that an owner-entrustor's liability for negligent entrustment does not result in vicarious liability for the negligence of the driver-entrustee and that the trial court erred in holding the owner-entrustor liable for all the damages. The judgment of the Court of Appeals is affirmed, and this case is remanded to the trial court for further proceedings consistent with this opinion. The costs on appeal are assessed equally against the appellant, Jasmine A. Ali, and the appellee, Thomas Scheve, and their sureties, for which execution shall issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE

---

[8] In her brief to this Court and at oral argument, Ali denied knowing about the deposit with the clerk until receiving Scheve's Supreme Court brief. In addition, $100,000 would not completely satisfy the $105,000 award we are ordering in this case, and it is clear that post-judgment interest will be owing on at least $5,000 of the $105,000 judgment. Moreover, depending on the date of payment, interest may be owed from the judgment date to the date of payment and may be due on the entire amount if it was not explicitly designated as satisfaction of the judgment.