IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 4, 2023 Session

## MELISSA BINNS v. TRADER JOE'S EAST, INC.

**Appeal by Permission from the Court of Appeals
Circuit Court for Davidson County
No. 19C938  Amanda Jane McClendon, Judge**

_____

**No. M2022-01033-SC-R11-CV**
_____

This interlocutory appeal involves an alleged slip and fall incident that occurred at the defendant's grocery store.  The plaintiff's amended complaint included allegations of vicarious liability, premises liability, negligent training, and negligent supervision against the defendant.  In an attempt to dismiss the plaintiff's negligent training and supervision claims, the defendant filed a motion for partial judgment on the pleadings and asserted two alternative arguments, both of which the trial court rejected.  First, the trial court rejected the defendant's argument that courts must dismiss "negligent activity" claims, such as claims for negligent training and supervision, when asserted concurrently with a premises liability theory of recovery.  Second, the trial court rejected the defendant's argument that the plaintiff's direct negligence claims were no longer legally viable due to the defendant admitting it was vicariously liable for the conduct of its employee, commonly referred to as the "preemption rule."  After denying the defendant's motion, the trial court granted permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.  The Court of Appeals denied the defendant's application.  The defendant then appealed to this Court, and we granted review.  We hold that the preemption rule is incompatible with Tennessee's system of comparative fault and decline to adopt it.  In addition, we decline to adopt the rule proposed by the defendant pertaining to "negligent activity" claims asserted alongside premises liability claims.  As a result, we affirm the trial court's order denying the defendant's motion for partial judgment on the pleadings and remand to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Trial Court Affirmed;
Remanded to the Trial Court**

ROGER A. PAGE, J., delivered the opinion of the court, in which HOLLY KIRBY, C.J., and JEFFREY S. BIVINS, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Sean W. Martin and Michael J. Petherick, Chattanooga, Tennessee, for the appellant, Trader Joe's East, Inc.

Donald Capparella, Tyler Chance Yarbro, and Jacob A. Vanzin, Nashville, Tennessee, and Jonathan L. Griffith and Jonathan D. Lawrence, Franklin, Tennessee, for the appellee, Melissa Binns.

W. Bryan Smith, Memphis, Tennessee, and Brian G. Brooks, Greenbrier, Arkansas, for the amicus curiae, Tennessee Trial Lawyers Association.

Janet Strevel Hayes and David A. Chapman, Knoxville, Tennessee, and Mary Beth White, Nashville, Tennessee, for the amici curiae, American Trucking Associations, Inc. and Tennessee Trucking Association, Inc.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves an alleged slip and fall incident that occurred at a Trader Joe's grocery store in Nashville, Tennessee. Melissa Binns ("Plaintiff") slipped and fell at a store owned and operated by Trader Joe's East, Inc. ("Defendant") on December 17, 2018.[1] Defendant's employee, Natalie Thompson, was stocking shelves in the "fresh aisle" of the store during the day of the accident. As alleged by Plaintiff in her amended complaint, Ms. Thompson "negligently and carelessly loaded a stocking cart in a messy and disorganized manner to stock the shelves of the fresh aisle." Among the products being loaded and stocked were boxes containing packages of tofu. The packages contained a clear liquid substance in which the tofu rested. Because Ms. Thompson allegedly loaded the cart and stocked the tofu in a "messy and careless manner," a package of tofu fell onto the floor of the store causing liquid to spill near the stocking cart. Ms. Thompson picked up the package of tofu but did not remove the liquid from the floor, leaving the spill unattended while she went to retrieve a caution sign. While shopping during this time, Plaintiff walked

---

[1] This appeal arises from the trial court's denial of Defendant's motion for partial judgment on the pleadings. Defendant's motion was filed following Plaintiff's filing of an amended complaint and Defendant's answer to the amended complaint. When this Court reviews a motion for judgment on the pleadings under Tennessee Rule of Civil Procedure 12.03, we use "the same standard that governs our review of a dismissal under Rule 12.02(6) for failure to state a claim." *Franks v. Sykes*, 600 S.W.3d 908, 911 (Tenn. 2020) (citing *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Therefore, we recite the facts as recorded in Plaintiff's amended complaint filed on February 2, 2022, "presuming them to be true and giving the plaintiff the benefit of all reasonable inferences." *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 8 (Tenn. 2021) (citing *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)).

down the fresh aisle and past the stocking cart that had been used by Ms. Thompson. With the spill unattended and a caution sign not yet in place, Plaintiff stepped in the clear liquid and fell to the floor, suffering injuries.

Plaintiff's amended complaint alleged premises liability, negligent training, and negligent supervision against Defendant.[2] The amended complaint also alleged that Defendant is vicariously liable for the negligent conduct of its employee, Ms. Thompson, "and all other employees of Defendant whose negligent acts and/or omissions directly and proximately caused" Plaintiff's injuries. In its answer to Plaintiff's amended complaint, Defendant denied liability for the incident. Relevant to this appeal, however, Defendant also admitted that it "is vicariously liable for the conduct of Natalie Thompson and any other employees under the doctrine of *respondeat superior* to the extent that their conduct falls within the course and scope of their employment with Defendant." Among other defenses asserted by Defendant in its answer, Defendant pleaded that "Plaintiff's claims for negligent training and supervision cannot be asserted concurrently with her premises liability claims" and that "Plaintiff is precluded from asserting claims for negligent training and supervision against Defendant because the parties admit that Defendant's employees acted in the course and scope of their employment with Defendant at the time of the December 17, 2018 slip and fall incident."

Following its answer, Defendant filed a motion for partial judgment on the pleadings, attempting to dismiss Plaintiff's negligent training and supervision claims. Again, Defendant argued that the direct negligence claims should be dismissed because they are "legally deficient" as a matter of law for two dispositive reasons. Similar to its answer to Plaintiff's amended complaint, Defendant's motion argued that the negligent training and supervision "claims are precluded because Defendant concedes that its employees acted in the course and scope of their employment at the time of Plaintiff's alleged slip and fall incident," a theory known as the "preemption rule."[3] Defendant

---

[2] Specifically, Plaintiff alleged Defendant was negligent in that it:

a) Failed to properly train and supervise its employees to safely load its stocking carts; b) Failed to properly train and supervise its employees to safely stock its shelves; c) Failed to properly train and supervise its employees to not create dangerous conditions in its store; d) Failed to properly train its employees to warn of dangerous conditions in its store floor; [e]) Created a dangerous condition; [f]) Failed to correct or remedy the dangerous condition; [g]) Failed to warn of the dangerous condition; and [h]) Failed to remove the dangerous condition.

[3] Courts throughout the country have referred to the rule by various names. *See Quynn v. Hulsey*, 850 S.E.2d 725, 727 (Ga. 2020) (labeling the rule as the "Respondeat Superior Rule"); *Bogdanski v. Budzik*, 408 P.3d 1156, 1160-61 n.4 (Wyo. 2018) (labeling the rule as the "*McHaffie* rule" after the Missouri Supreme Court case, *McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. 1995) (en banc)); *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 334 (Ky. 2014) (labeling the rule as the "preemption rule"). Because the parties

advocated for the trial court to apply the preemption rule even though the Tennessee Supreme Court had not yet adopted it. Alternatively, Defendant argued that "[c]laims based on negligent activity (*e.g.*, negligent training or supervision) and premises liability claims are logically inconsistent and cannot be asserted concurrently in a lawsuit by a single plaintiff." Defendant highlighted that this proposed rule had not yet been addressed by Tennessee courts.

The trial court denied Defendant's motion for partial judgment on the pleadings.[4] Despite denying Defendant's motion, the trial court granted Defendant's request for permission to file an interlocutory appeal to "prevent needless, expensive, and protracted litigation" and to "develop a uniform body of law." Tenn. R. App. P. 9(a). Thereafter, Defendant applied for permission to appeal in the Court of Appeals under Tennessee Rule of Appellate Procedure 9(c) to raise its arguments related to Plaintiff's direct negligence claims. The Court of Appeals denied Defendant's application, stating that it could not "conclude that an interlocutory appeal is necessary to prevent irreparable injury, to develop a uniform body of law, or to prevent needless, expensive and protracted litigation." Following the Court of Appeals' denial, we granted review to consider the viability of the preemption rule under Tennessee law and to consider whether to adopt Defendant's proposed rule pertaining to "negligent activity" claims asserted alongside premises liability claims.

## II. SCOPE AND STANDARD OF REVIEW

This is an interlocutory appeal. Therefore, the Court's review is "limited to those questions clearly within the scope of the issues certified for interlocutory appeal." *Metro. Gov't of Nashville & Davidson Cnty. v. Tenn. Dep't of Educ.*, 645 S.W.3d 141, 147 (Tenn. 2022) (citing *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 210 (Tenn. 2019)). Plaintiff argues that the trial court did not certify the premises liability issue, thereby eliminating the need and ability of this Court to address it. We disagree. As noted above, the trial court granted Defendant's motion for permission to file an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. In its order stating "the specific . . . issues the court is certifying for appeal and the reasons for its opinion," Tenn. R. App. P. 9(b), the trial court found the following:

> In regard to *Tenn. R. App. P.* 9(a)(2), the Court finds that permitting an interlocutory appeal is appropriate because it will prevent needless,

---

have labeled this rule, both in their briefs and at oral argument, as the "preemption rule," we will remain consistent and do the same.

[4] In its denial order, the trial court mistakenly referred to Defendant's motion as one for partial summary judgment. In a subsequent order, the trial court appears to have recognized this mistake by correctly referring to Defendant's motion as one for partial judgment on the pleadings.

- 4 -

expensive, and protracted litigation. . . . A significant amount of discovery conducted in this case has pertained to Plaintiff's direct negligence claims, including a corporate representative deposition Plaintiff seeks to conduct. If the April 14, 2022 Order is reversed on appeal after the parties complete discovery and trial, the parties will have wasted time and resources litigating Plaintiff's direct negligence claims.

In regard to *Tenn. R. App. P.* 9(a)(3), the Court finds that permitting an interlocutory appeal is appropriate because there is a need to develop a uniform body of law. The Court finds that there is great inconsistency among the orders entered by Tennessee federal and state trial courts on the issue of whether a plaintiff can assert direct negligence claims against an employer if the employer admits that it will be vicariously liable for the negligent conduct attributed to its employees under the doctrine of *respondeat superior*. . . . Finally, the issue of whether direct negligence claims can be asserted against a premises owner concurrently with a premises liability theory of recovery is an issue of first impression under Tennessee law.

The trial court's order explicitly references both the preemption rule issue and the premises liability issue when describing its reasoning for granting Defendant's motion. We reject Plaintiff's argument that only the preemption rule issue was certified by the trial court; thus, both issues are properly before this Court.

When this Court reviews a motion for judgment on the pleadings under Tennessee Rule of Appellate Procedure 12.03, we use "the same standard that governs our review of a dismissal under Rule 12.02(6) for failure to state a claim." *Franks v. Sykes*, 600 S.W.3d 908, 911 (Tenn. 2020) (citing *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Therefore, "[w]e review de novo a motion for judgment on the pleadings." *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 58 (Tenn. 2023) (citing *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 275 (Tenn. 2015)); *see also* Tenn. R. Civ. P. 12.03. "We accept all the non-moving party's factual allegations as true and draw all reasonable inferences in that party's favor." *Lawson*, 661 S.W.3d at 58 (citing *King v. Betts*, 354 S.W.3d 691, 709 (Tenn. 2011)). Here, Defendant's motion for partial judgment on the pleadings requires this Court to consider the legal viability of Plaintiff's negligent training and negligent supervision claims, which is also a question of law we review de novo. *See Mortg. Elec. Registration Sys., Inc.*, 488 S.W.3d at 275.

### III. ANALYSIS

We first consider the parties' arguments relating to the preemption rule and whether this Court should adopt the rule in Tennessee. We then consider Defendant's proposed

rule pertaining to "negligent activity" claims asserted concurrently with a premises liability theory of recovery.

## A. Preemption Rule

Under the common law doctrine of respondeat superior, "an employer may be held liable for the torts committed by his or her employees while performing duties within the scope of employment." *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 363 (Tenn. 2011) (quoting *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000)). In other words, an employer may become vicariously liable for the negligent conduct of its employee. In jurisdictions that apply the preemption rule, if an employer admits it will be vicariously liable for the actions of its employee, the plaintiff is no longer permitted to pursue direct negligence claims such as negligent entrustment, supervision, or training. *See, e.g.*, *McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995) (en banc) ("[O]nce an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability."). In jurisdictions that do not apply the preemption rule, "[t]he employer's admission to the existence of an agency relationship from which vicarious liability may arise does not supplant the claim that the employer's own negligence, independent of the negligence of the employee, may have caused or contributed to the injury." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 337 (Ky. 2014). In such cases, "an employer may be liable for injuries caused both by its own independent negligence in hiring, training, retaining, or supervising an employee *and,* at the same time, under the doctrine of *respondeat superior* for the injuries caused by its employees' negligent behavior." *Id.* at 335.

Although this Court has not yet addressed this issue, other courts in Tennessee and throughout the country have. *See, e.g.*, *Ramon v. Nebo Sch. Dist.*, 493 P.3d 613, 619 (Utah 2021) (citing cases); *McHaffie*, 891 S.W.2d 822; *Allgeier*, 433 S.W.3d 324; *Quynn v. Hulsey*, 850 S.E.2d 725 (Ga. 2020); *Jones v. Windham*, No. W2015-00973-COA-R10-CV, 2016 WL 943722 (Tenn. Ct. App. Mar. 11, 2016), *vacated*, *Jones v. Windham*, No. W2015-00973-SC-R11-CV, 2016 Tenn. LEXIS 538, at *1 (Tenn. Aug. 19, 2016); *Ryans v. Koch Foods, LLC*, No. 1:13-cv-234-SKL, 2015 WL 12942221 (E.D. Tenn. July 8, 2015). In Tennessee, the Court of Appeals issued an opinion rejecting the preemption rule in *Jones v. Windham*, 2016 WL 943722, at *5. However, that decision was later vacated by this Court after concluding the appeal was improvidently granted by the Court of Appeals. *Jones*, 2016 Tenn. LEXIS 538, at *1. In Defendant's memorandum in support of its motion for permission to file an interlocutory appeal in the instant case, Defendant attached four orders entered by Tennessee state trial courts. Two of these courts applied the preemption rule and two rejected it. In addition, the United States District Courts for the Eastern, Middle, and Western Districts of Tennessee each applied the preemption rule, predicting

that if this Court addressed the issue, it would adopt the rule in Tennessee.[5]  *See, e.g.*, *Ryans*, 2015 WL 12942221, at \*9; *Freeman v. Paddack Heavy Transp., Inc.*, No. 3:20-cv-00505, 2020 WL 7399026, at \*3 (M.D. Tenn. Dec. 16, 2020); *Jackson v. Trendafilov*, No. 19-cv-02886-SHM-cgc, 2022 WL 1721210, at \*3 (W.D. Tenn. May 27, 2022) ("United States district courts sitting in each of the districts in Tennessee have concluded that the Tennessee Supreme Court would adopt the preemption rule.").

Due to the absence of controlling authority in Tennessee, Plaintiff and Defendant both attempt to argue that their respective position is the "majority rule" or the "clear trend" throughout the remainder of the country.  Defendant highlights that the preemption rule is regarded as the "majority rule" by some courts.  *See, e.g.*, *Ryans*, 2015 WL 12942221, at \*8 ("The majority of courts that have considered the question hold that where an employer has admitted liability for the acts of its employee under another theory of recovery, it is improper to allow the plaintiff to proceed under direct negligence theories, as those claims merge with the vicarious liability claim.").  In contrast, Plaintiff argues that a fairly even split exists between adopting and rejecting the preemption rule, with rejecting the rule being the "clear trend in state supreme court decisions since 2018."  However, as stated by the Kentucky Supreme Court, little weight should generally be given to "the absolute number of jurisdictions which have adopted a particular rule," *Allgeier*, 433 S.W.3d at 334 n.8, especially when the split is relatively even.  *Id.* ("We avoid the use of the terms 'majority rule' and 'minority rule' because there appears to be a fairly even split among jurisdictions in adopting the [preemption rule and non-preemption rule] . . . .").  Rather than counting the number of jurisdictions that have ruled each way, we approach this question by examining the compatibility of the preemption rule with Tennessee law and by considering the merits of the arguments presented by the parties and amici curiae, the Tennessee Trial Lawyers Association, American Trucking Associations, and Tennessee Trucking Association.

The parties provide several arguments for why this Court should or should not adopt the preemption rule.  The first argument we address, and the most important, is whether the preemption rule is compatible with Tennessee's system of modified comparative fault.  *See generally Lorio v. Cartwright*, 768 F. Supp. 658, 660 (N.D. Ill. 1991) (explaining how the rationale of the preemption rule is "very powerful in a contributory negligence jurisdiction" but "loses much of its force" in a comparative fault system).  In 1992, this

---

[5] Although federal district courts in Tennessee predicted that this Court would adopt the preemption rule, those decisions do not bind us.  *See State v. Frazier*, 558 S.W.3d 145, 156 (Tenn. 2018).  Furthermore, we agree with Plaintiff's argument that the rationale of some of the federal decisions has been subsequently weakened due to their citation to now-overruled case law.  *See Ryans v. Koch Foods, LLC*, No. 1:13-cv-234-SKL, 2015 WL 12942221, at \*8-9 (E.D. Tenn. July 8, 2015).  For example, the *Ryans* court cited to a Tennessee federal district court case applying Georgia law in a diversity case, *Scroggins v. Yellow Freight System, Inc.*, 98 F. Supp. 2d 928 (E.D. Tenn. 2000).  However, Georgia recently rejected the preemption rule in *Quynn v. Hulsey*, 850 S.E.2d 725 (Ga. 2020).

Court abandoned the common law rule of contributory negligence, instead judicially adopting a system of modified comparative fault. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). Thus, in Tennessee, a plaintiff may "recover so long as plaintiff's fault is less than the combined fault of all tortfeasors." *Id.* at 58. Subsequent cases clarified that Tennessee's system of comparative fault "broadly permit[s] allocation of fault to all persons involved in an injury-causing event," *Carroll v. Whitney*, 29 S.W.3d 14, 21 (Tenn. 2000), such as parties immune from suit or parties that have already settled with the plaintiff. *Id.* at 21-22; *McNabb v. Highways, Inc.*, 98 S.W.3d 649, 654-55 (Tenn. 2003).

Defendant argues that the preemption rule is compatible with Tennessee's modified comparative fault system by citing to *Ali v. Fisher*, 145 S.W.3d 557 (Tenn. 2004), for the proposition that vicarious liability is an exception to the general rule that the fault of all persons or entities involved must be compared under Tennessee's system of comparative fault. In *Ali*, the plaintiff, Ms. Ali, sustained injuries when her car was struck by another vehicle driven by Mr. Fisher. *Id.* at 559. Prior to the accident, Mr. Fisher borrowed the vehicle from his co-worker, Mr. Scheve. *Id.* at 560. When officers attempted to make a traffic stop, Mr. Fisher "accelerated to a speed in excess of 100 miles per hour," ran through a red light, and struck Ms. Ali's car. *Id.* at 559. After the accident, Mr. Fisher's blood-alcohol content registered 0.21%, well over the legal limit. *Id.* The case was submitted to the jury to determine the allocation of fault based on comparative fault principles. *Id.* at 560. The jury determined that Mr. Fisher was 80% at fault as the driver-entrustee and that Mr. Scheve was 20% at fault as the owner-entrustor. *Id.* The trial court apportioned the damages based on the jury's allocation, but later granted Ms. Ali's motion to amend the judgment so that Mr. Scheve would become vicariously liable for the fault of Mr. Fisher. *Id.* at 561. This Court granted review to determine whether an owner who negligently entrusts a vehicle to another may be held vicariously liable for the driver's negligence in operating the car and held that "negligent entrustment does not create vicarious liability." *Id.* at 561, 564.

Despite Defendant's argument to the contrary, we do not find *Ali* to support the notion that the "preemption rule is entirely consistent with Tennessee's system of modified comparative fault." Defendant's primary reliance on the case stems from the following statements in *Ali*:

> [W]e have only rarely departed from the allocation of fault required under the system of comparative fault we adopted in *McIntyre.* One exception is that negligent tortfeasors cannot seek to have their fault compared to that of intentional tortfeasors "where the intentional conduct is the foreseeable risk created by the negligent tortfeasor." A second exception is where vicarious liability is based on an agency relationship between a principal and the principal's negligent agent, such as . . . respondeat superior.

*Id.* at 564 (citations omitted); *see also Ryans*, 2015 WL 12942221, at *9 (also highlighting the listed exceptions to comparative fault allocation in *Ali* as support for its prediction that this Court would adopt the preemption rule).

Plaintiff argues that these statements constitute dicta, while Defendant argues it is not dicta because "it was part of the Court's rationale for its ruling." However, regardless of whether the statements in *Ali* were necessary to the Court's holding, we do not interpret them as support for adopting the preemption rule. Rather, we agree with the Court's comments in *Ali* in the sense that the jury does not compare the fault between an employer and employee if an employer is only *vicariously* liable to a plaintiff under the doctrine of respondeat superior. This is because vicarious liability is simply a "legal rationale for holding a master responsible for a tort committed by his servant." *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005). In other words, an employer becomes "financially responsible for the tortious actions of another, even [if] the vicariously liable party was not negligent." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998) (citing *Prosser and Keeton on Torts*, § 69 (5th ed. 1984)). Thus, when an employer is only vicariously liable to a plaintiff under the doctrine of respondeat superior, *Ali* is correct in noting that vicarious liability is an "exception" to the general rule of comparing the fault of all persons or entities involved, i.e., a jury would not compare the fault of the employer and employee in such a scenario.

However, in many cases, such as the case before us today, a plaintiff alleges both direct negligence and vicarious liability. As previously mentioned, the Court in *Ali* held that "negligent entrustment does not create vicarious liability and that the jury must allocate the fault between the defendants as provided in *McIntyre*." *Ali*, 145 S.W.3d at 564. The Court reasoned that "the allocation of fault by the jury between the entrustor and the entrustee is entirely consistent with the principal goal of comparative fault under *McIntyre,* i.e., to link one's liability to one's degree of fault in causing harm." *Id.* at 563-64 (citing *McIntyre*, 833 S.W.2d at 58). As a result, the Court affirmed the Court of Appeals' decision to reinstate the original judgment in which the jury allocated fault separately between the entrustor and the entrustee. *Id.* at 564. Although *Ali* involved an allegation of negligent entrustment, its rationale applies equally to the direct negligence claims involved here, negligent training and negligent supervision.

While direct negligence claims such as negligent training and supervision may be classified as derivative in the sense that both typically require the plaintiff to prove that an employee's underlying conduct was negligent,[6] the liability stemming from negligent

---

[6] *Compare Diaz v. Carcamo*, 253 P.3d 535, 543 (Cal. 2011) ("No matter how negligent an employer was in entrusting a vehicle to an employee, however, it is only if the employee then drove negligently that the employer can be liable for negligent entrustment, hiring, or retention."), *with McQueen v. Green*, 202 N.E.3d 268, 280-81 (Ill. 2022) (holding that an employer who admitted liability under respondeat superior

- 9 -

training and supervision is not vicarious. *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. 729, 735 (W.D. Tenn. 1997) (Liability for negligent training "is not liability based on *respondeat superior;* the employer still may be held liable for the negligent acts of his or her servant."); *see Ali*, 145 S.W.3d at 564 ("The act of negligent entrustment and the act of negligent operation of a vehicle are separate and distinct."); *Quynn*, 850 S.E.2d at 730 (providing that while a plaintiff's direct negligence claims against an employer "may have required [the employee] to have been negligent, and so are derivative of its employee's negligence to that extent," a jury is still able to assign fault separately between the employer and employee).

For example, in a case involving an allegation of negligent supervision, the Court of Appeals explained the fundamental differences between a direct negligence claim and vicarious liability:

> Negligent supervision and respondeat superior are distinct legal claims that, if proven, impose liability on an employer in different ways. Under the doctrine of respondeat superior, an employer is vicariously liable for the actions of its employees while acting within the course and scope of their employment.
>
> In contrast, under a claim of negligent supervision, an employer is directly liable for breaching its own *independent* duty to hire competent employees and supervise them appropriately. Consequently, claims based on negligent supervision are independent of claims based on respondeat superior, and the existence of one claim does not render the other claim superfluous or unnecessary.

*Gordon v. Tractor Supply Co.*, No. M2015-01049-COA-R3-CV, 2016 WL 3349024, at *11-12 (Tenn. Ct. App. June 8, 2016) (emphasis added) (citations omitted). Thus, notwithstanding the typical need to prove an employee's underlying negligent conduct, the fault and liability stemming from direct negligence claims involve an employer's *own* negligence, not only the underlying negligence of its employee. Indeed, an employer may be both directly liable for its own negligent conduct, as well as vicariously liable for the negligent conduct of its employee under the doctrine of respondeat superior. Restatement (Second) of Agency § 213 cmt. h (Am. Law Inst. 1958) ("In a given case the employer may be liable both on the ground that he was personally negligent and on the ground that the conduct was within the scope of employment."). As a result, adopting the preemption rule would permit an employer to eliminate evidence of a breach of duty separate from the negligence of its employee, a clear inconsistency with Tennessee's system of comparative

---

may be independently liable "for its own misconduct even if the jury finds that its employee was not negligent").

fault that seeks to achieve "a tighter fit between liability and fault." *Carroll*, 29 S.W.3d at 16.

The practical effects of the preemption rule further suggest that it is at odds with Tennessee's system of comparative fault. At oral argument, Plaintiff's counsel raised a hypothetical in which a plaintiff was 40% at fault, an employee was 15% at fault (with the employer being vicariously liable for this portion), an employer was 30% at fault for its direct negligence, and a separate defendant was 15% at fault. Using Plaintiff's hypothetical, the practical effect of the preemption rule forces the jury to redistribute the employer's 30% share among the remaining at-fault parties without having been presented with evidence of the employer's direct negligence. In our modified comparative fault system, it is entirely conceivable that a jury's allocation of fault in such a scenario could push a plaintiff's share above the 50% threshold. *See also* J.J. Burns, Note, *Respondeat Superior as an Affirmative Defense: How Employers Immunize Themselves from Direct Negligence Claims*, 109 Mich. L. Rev. 657, 671 (2011) ("[I]f a party's negligence is taken out of the equation, the other parties necessarily have to fill in the vacuum that is left by the absent party."). Such an outcome clearly does not "closely link[] liability and fault." *McIntyre*, 833 S.W.2d at 58. For this reason, we disagree with Defendant's contention that after "employers admit vicarious liability for the allegedly negligent conduct of their employees, evidence of direct negligence on the part of the employers serves no purpose other than to prejudice defendants, inflame the passions of jurors, and unreasonably expand the scope of discovery." Rather, as illustrated by Plaintiff's hypothetical, evidence of an employer's direct negligence enables the fact finder to allocate "fault to all persons involved in an injury-causing event." *Carroll*, 29 S.W.3d at 21. Conversely, permitting an employer to eliminate a plaintiff's direct negligence claims at the pleading stage simply by admitting to vicarious liability results in a potentially distorted allocation of fault, thereby "forc[ing] a jury to allocate fault between parties who were not wholly responsible." *Id.* at 19.

Distorting the allocation of fault analysis also undercuts a common justification for adopting the preemption rule. Some courts reason that permitting direct negligence claims under these circumstances is "improper" because the "liability of the employer is fixed by the amount of liability of the employee . . . regardless of the 'percentage of fault' as between the party whose negligence directly caused the injury and the one whose liability for negligence is derivative." *McHaffie*, 891 S.W.2d at 826 (citation omitted). However, even assuming this assertion to be true,[7] the preemption rule certainly may affect how much a "plaintiff's damages are . . . reduced in proportion to the percentage of the total negligence attributable to the plaintiff," *McIntyre*, 833 S.W.2d at 57, or more harshly, the ability of a

---

[7] *But see McQueen*, 202 N.E.3d at 275, 280-81 (holding that a plaintiff may proceed with a direct negligence claim despite the employer admitting to vicarious liability and despite the jury finding that the employee was not at fault).

plaintiff to recover at all. *See id.* ("We therefore hold that so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover . . . ."). As previously explained, it is more than conceivable that eliminating the employer's alleged direct negligence from the jury's consideration may result in a plaintiff or additional defendant being allocated a greater percentage of fault. For these reasons, we consider the preemption rule to be in conflict with the basic principles of Tennessee's system of modified comparative fault.

Other considerations also cut in favor of rejecting the preemption rule. Defendant expresses concern that after respondeat superior liability is admitted, "evidence of direct negligence only serves to prejudice defendants[] [and] inflame the passions of jurors." While we agree that inflammatory evidence often exists in lawsuits, the Tennessee Rules of Evidence exist, in part, to guard against the admission of overly prejudicial evidence. *See* Tenn. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). As the South Carolina Supreme Court astutely explained:

> [W]e think the argument that an independent cause of action against an employer must be precluded to protect the jury from considering prejudicial evidence presumes too much. Our court system relies on the trial court to determine when relevant evidence is inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . . In our view, the argument that the court must entirely preclude a cause of action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court's ability to judge the admission of evidence and to protect the integrity of trial, and to the jury's ability to follow the trial court's instructions.

*James v. Kelly Trucking Co.*, 661 S.E.2d 329, 632-33 (S.C. 2008) (citation omitted). Indeed, "[w]e do not think we can accurately predict that the evidence needed to prove a [direct negligence] claim will always flunk" Rule 403 of the Tennessee Rules of Evidence. *Ramon*, 493 P.3d at 620. We prefer to entrust the trial court judges of Tennessee to make the determination of whether a particular piece of evidence involving a direct negligence claim fails the balancing test under Rule 403.

The preemption rule also conflicts with the basic principle in Tennessee jurisprudence that "[p]laintiffs are the masters of their complaint." *Mullins v. State*, 294 S.W.3d 529, 540 (Tenn. 2009). To that end, Rule 8.01 of the Tennessee Rules of Civil Procedure provides that plaintiffs may plead "[r]elief in the alternative or of several different types." In a similar vein, Rule 8.05(2) permits parties to "state as many separate claims or defenses as he or she has, regardless of consistency." Tenn. R. Civ. P. 8.05(2). These principles further cut in favor of rejecting the preemption rule; preventing a plaintiff

from proceeding against an employer under two alternative theories of recovery conflicts with "the notion that plaintiffs are free to pursue several alternative theories of recovery and to structure their claims in the manner that is most beneficial to them." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn. 1999). Particularly in light of our conclusion that the preemption rule conflicts with Tennessee's system of comparative fault, we see little reason to make an exception to the basic concept in Tennessee that "the plaintiff is in control of her own case and can proceed as she sees fit." *Smith v. Methodist Hosps. of Memphis*, 995 S.W.2d 584, 591 (Tenn. Ct. App. 1999).

This Court is also concerned that the preemption rule is not entirely consistent with the principle of deterrence, which we have long considered an "operative polic[y] of tort law." *Smith v. Gore*, 728 S.W.2d 738, 748 (Tenn. 1987). As previously explained, the fault and liability stemming from direct negligence claims involve an employer's *own* negligence. A rule that allows a defendant to eliminate evidence of its own direct negligence by admitting to vicarious liability eliminates *some* of the deterrence that direct negligence causes of action provide. Defendant argues that "tort law's deterrence goal is already served when the preemption rule is applied because vicarious liability is admitted." In Defendant's view, "[i]f employers admit vicarious liability, they are completely responsible for the negligent conduct of their employees by operation of Tennessee law." We agree that under the preemption rule, a rational employer would certainly wish to avoid being vicariously liable for any negligent conduct of their employees. However, even though employers are still incentivized to provide adequate training and supervision under the preemption rule, the rule still carries a risk of the fact finder apportioning a greater percentage of fault to the plaintiff or a second defendant, as explained above. Furthermore, the preemption rule would allow especially-blameworthy employers to prevent egregious evidence of negligent training and supervision from being considered by the fact finder. Permitting employers to prevent the admission of this type of evidence does not serve the goal of deterrence in tort law.

In summary, the preemption rule conflicts with Tennessee's system of modified comparative fault and certain well-established principles of Tennessee jurisprudence. As a result, we decline to adopt the preemption rule in Tennessee and hold that a plaintiff may proceed with a direct negligence claim against an employer even after the employer admits to being vicariously liable for the actions of its employee.

## B. Premises Liability

In Defendant's motion for partial judgment on the pleadings, Defendant also argued that Plaintiff's direct negligence claims are "legally deficient" because they were asserted concurrently with a premises liability theory of recovery. Before this Court, Defendant argues that "[c]laims based on negligent activity (*e.g.*, negligent training or supervision claims) and premises liability claims are logically inconsistent and plaintiffs should not be

able to assert those claims concurrently." As the trial court noted, this is an "issue of first impression under Tennessee law."

In support of its argument, Defendant cites to several Texas cases for the principle that a "plaintiff cannot pursue both a negligent activity and a premises defect theory of recovery based on the same injury." *Allen v. Wal-Mart Stores Texas, LLC*, No. H-14-3628, 2015 WL 1955060, at \*5 (S.D. Tex. Apr. 29, 2015); *see also Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (holding that "[t]he trial court properly did not submit a negligent activity theory of liability" but did properly submit the case on only a premises condition theory because "[t]here was no ongoing activity when [the plaintiff] was injured"). In Texas, to recover under a "negligent activity" theory as opposed to a "premises condition" theory, a plaintiff must be "injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch*, 845 S.W.2d at 264. In contrast, "a premises defect claim is based on the property itself being unsafe." *Texas v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Although certain Texas cases provide that "[a] plaintiff cannot pursue both a negligent activity and a premises defect theory of recovery based on the same injury," *Allen*, 2015 WL 1955060, at \*5, it appears the Texas Supreme Court has expressly held open the question of "whether a single injury could give rise to both a premises-liability claim and a negligent-activity claim if both the condition of the premises and the contemporary activities of the premises owner proximately cause the injury," *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 216 n.22 (Tex. 2015).

Regardless of the intricacies of Texas law on this issue, Defendant does not cite to any Tennessee authority, and we have found none, that provides a persuasive argument for the adoption of its proposed rule regarding premises liability and "negligent activity claims." Here, Plaintiff alleges Defendant is liable under both a premises liability theory of recovery, as well as for negligent training and supervision. In Tennessee, "to maintain a claim for premises liability, a plaintiff must present prima facie evidence of the customary elements of negligence." *Est. of Smith v. Highland Cove Apartments, LLC*, 670 S.W.3d 305, 313 (Tenn. Ct. App. 2023) (citing *Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn. Ct. App. 1996)). Regarding the duty element, "[a]n owner or occupier of land has the duty to exercise reasonable care with regard to invitees on the premises." *Id.* This duty "imposes upon a property owner the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)).

Turning to Plaintiff's direct negligence claims, Tennessee law "recognizes a claim for the negligent . . . training of employees," *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 737 (Tenn. Ct. App. 2018), and also recognizes claims for "negligent hiring, supervision

or retention of an employee if [a plaintiff] establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Doe v. Cath. Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (citing *Phipps v. Walker*, No. 03A01-9508-CV-00294, 1996 WL 155258, at *3 (Tenn. Ct. App. Apr. 4, 1996)); *see also* Restatement (Second) of Agency § 213 (An employer "is subject to liability for harm resulting from his conduct if he is negligent or reckless: (a) in giving improper or ambiguous orders of in failing to make proper regulations; or . . . (c) in the supervision of the activity . . . .").

Defendant's primary argument for this Court to adopt the proposed rule stemming from Texas is that the claims "are logically inconsistent." We disagree that such claims, which will turn on the particular facts of a given case, are necessarily inconsistent. Regardless, even if such claims were logically inconsistent in a given case, we would find no reason to adopt Defendant's proposed rule based on that reason alone. As we previously discussed regarding the preemption rule, "[p]laintiffs are the masters of their complaint." *Mullins*, 294 S.W.3d at 540. Rule 8.05(2) of the Tennessee Rules of Civil Procedure permits parties to "state as many separate claims or defenses as he or she has, regardless of consistency." Thus, we fail to find a compelling reason to forbid a plaintiff from pursuing claims based both on a defendant's responsibilities as the premises owner, as well as any negligent conduct by the defendant contributing to the injury. We therefore decline to adopt Defendant's proposed rule regarding premises liability and negligent activity claims.

## IV. CONCLUSION

In summary, we decline to adopt both the preemption rule and the proposed rule involving premises liability claims asserted concurrently with negligent activity claims. Accordingly, we affirm the trial court's order denying Defendant's motion for partial judgment on the pleadings and remand to the trial court for further proceedings. The costs on appeal are taxed to Defendant, Trader Joe's East, Inc., for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE